# ATTACHMENT C

# TO BOSWELL

# DECLARATION

# PART 4

The following is a summary of Type 2 Claims and Settlements:

Type 2 Claims
Settlement Estimate
($ millions)

| Type 2 Settlement Category | Total |
|---|---|
| 2-1: IIM Account Holders Settlement Proposal | 281 |
| Specific Settlement of Past Damages to IIM Holders | |
| 1. Amount is equal to estimated reconciliation costs for IIM Accounts. Amount will be invested in IIM pool for benefit of all account holders, past, present and future who will receive a higher yield as a result. | |
| 2. Settlement also includes tax free status for future IIM accounts. | Tax Free Status |
| 2-2: Restoration of IIM Thrift Industry Losses | 13 |
| Specific Settlement to restore interest lost by IIM account holders because of principal that was lost as a result of IIM Pool investments in obligations of failed thrifts in 1980s. | |
| 2-3: Restoration of Overdraft Interest Clearing Accounts | 42.2 |
| Specific Settlement to restore $42 million in unidentified Overdraft Interest Clearing Accounts to the IIM Pool. Amount is equivalent to non-earning assets which deprive current IIM account holders of over $2 million in annual income. | |
| 2-4: Miscellaneous OTFM General Ledger Losses | 28.3 |
| Specific Settlement to clear $28.3 million in general ledger differences, suspense amounts, balancing differences, overdraft losses and other losses. | |

Type 2 Claims Settlement Estimate ($millions) (continued)

| Type 2 Settlement Category | Total |
|---|---|
| 2-5: IIM and Tribal Account Holders Joint Settlement for Systems Improvements | 147 |

    Specific Settlement to bring trust management systems up to commercial standards. Amount is the estimated cost to implement the Special Trustee's Strategic Plan over five years. Implementation will ensure that the government takes the actions necessary to provide an accurate and timely accounting to American Indian trust beneficiaries in the future. In this manner the proper discharge of the Secretary's trust responsibilities finally can be accomplished.

2-6: Settlement for Reconciliation Project Unreconciled Transactions

    2-6A. General Settlement of potential damages for all unreconciled transactions arising from the Reconciliation Project. Proceeds of General Settlement will be used to partially capitalize Development Bank (See Settlement 2-7) — 300

    2-6B. Specific Settlement for the following 32,901 transactions for which supporting documentation could not be located during the Reconciliation Project ($ million, absolute value): — 300

| | |
|---|---:|
| Receipts: | 1,123.3 |
| Transfers: | 479.6 |
| Disbursements | 808.6 |
| Total | 2,411.5 |

Actual Disbursement Exposure can be computed as:

| | |
|---|---:|
| Unreconciled ($ million, absolute value) | 808.6 |
| Less: Positive Disbursements | (73.6) |
|     Attorney and Expert Witness Fees | (40.5) |
|     Alaska Regional Corporations | 119.5 |
| Principal Disbursement Exposure | 575.1 |
| Interest on Principal | 1,361.8 |
| Total Disbursement Exposure | 1,936.9 |

29

Type 2 Claims Settlement Estimate ($millions) (continued)

Type 2 Settlement Category                                                                 Total

$300 million will be disbursed to individual tribes with known unreconciled disbursements. The settlement for each tribe would equal the product of the percentage of each tribe's unreconciled disbursements plus interest (date of inception through 12/31/95) to total unreconciled disbursements plus interest on the total times the settlement amount of $300 million. The excess principal and interest potential liability to the tribes will be considered satisfied by the 2-6A general settlement and by the 2-7 general settlement.

2-7: General Settlement for IIM and Tribal Account Holders

Settlement 2-7 is intended to settle all other potential claims arising out of the reconciliation project not covered by Type 1 claims and other Type 2 claims and all past potential liability for trust mismanagement to be defined by the legislation through the effective date of settlement set by legislation.

General Settlement 2-7 involves the creation of a federal Development Bank for American Indians (D-Bank) which will be formed and capitalized by the federal government and will be a nationwide financial institution providing a dependable source of lending to American Indians and American Indian Tribes and their communities and a dependable source of investing in American Indian Enterprises.

D-Bank will provide access to long-term loans and investments for economic development, consistent with principles of self-determination, self-governance and self-sufficiency and will provide access to low interest rates on loans, made possible by D-Bank's tax free status and its access to funding in the nation's capital markets at rates commensurate with those paid by the U. S. Government and Agencies of the U. S. Government.

D-Bank will also be allowed to invest up to $300 million in the purchase, holding, financing and sale of fractionated realty interests in Indian allotment lands. Such purchases and financings will be made on prudential terms to eligible individuals and tribes. Such activities will be regulated by rules set forth in legislation to resolve the fractionated heirship issues and will be administered to achieve the consolidation of existing fractional interests and the prevention or substantial reduction of further fractionation.

Type 2 Claims Settlement Estimate ($millions) (continued)

Type 2 Settlement Category

D-Bank will be a for-profit financial institution and will not receive appropriated funds for operating expenses. It will receive appropriated funds for lifeline financial services and other specified programs as approved by Congress.

D-Bank will be authorized to invest up to 25% (initially $125 million) of its permanent capital in eligible individual Indian and Indian Tribe businesses and projects which will aid economic development of the American Indian communities. These investments include common and preferred stock and long-term subordinated draft investments in:

    A.    Infrastructure Acquisition and Development Activities
    B.    Project Financing
    C.    Venture Capital Businesses
    D.    Established Business

D-Bank's capital and funding will be provided by the federal government in the following amounts:

2-7A. Equity Capital:    500

    Initial Equity Capital of $500 million will be provided by the federal government as part of Settlement 1-6A ($200 Million) and 2-6A ($300 million). Shares will be distributed to all federally recognized tribes on some equitable basis set forth in legislation.

2-7B. Loans from U. S. Government:    3,000

    $3 billion in direct long-term loans will be provided to D-Bank for thirty years at the U. S. Treasury rate for 30 year obligations.

2-7C. U. S. Government Guaranteed Obligations    5,000

    Future funding of up to 10 times equity capital from the sale of bonds and notes in the nation's capital markets by D-Bank will be guaranteed by the full faith and credit of the United States. Loans from the United States Government of $3 billion are included in this amount.

---

Attachment C Part 4 to Boswell Declaration    31

Type 2 Claims Settlement Estimate ($millions) (continued)

| Type 2 Settlement Category | Total |
|---|---|
| **Total Type 2 Claims:** | |
| 1. Direct Settlement Obligations: Settlements 2-1 through 2-7A | 1,611.5 |
| 2. Loans from U. S. Government: Settlement 2-7B | 3,000 |
| 3. U. S. Government Guaranteed Obligations of $5 billion, net of $3 billion Loan: Settlement 2-7C | 2,000 |
| Total Type 2 Claims | 6,611.5 |

## V. WAIVERS AND LITIGATION

If a tribe accepts payment of its Type 2 claims under the legislation's settlement process, the acceptance would constitute a full discharge of the United States with respect to all claims regarding Tribal trust fund accounts for the period prior to September 30, 1995. Settlements under the statute would not be reviewable in court. If a tribe did not accept settlement under these provisions, the tribe could litigate its claims, but none of the guidelines pertaining to the value of its claims would be applicable, nor would the tribe be able to participate in the Type 2 settlements.

Tribes that do not settle claims under the settlement procedure outlined above may seek to litigate those claims in court; however, such litigation is usually extremely costly and time-consuming for all the litigants. For these reasons, the Department has specifically rejected any litigation process that would resemble the Indian Claims Commission proceedings of years past, and believes that the legislation establishing the settlement procedures also must establish certain parameters for litigating the claims of non-settlers. Such parameters are necessary to ensure that litigation proceeds in an orderly and efficient manner, to ensure that the beneficiaries of the claims, as opposed to their attorneys and accountants, are the persons who benefit from any amounts recovered in litigation, and to encourage settlement of as many claims as possible. The Department may seek to establish parameters for the litigation of claims for those who do not avail themselves of the settlement opportunities in the legislation. Such parameters could address and resolve, for example, issues relating to statute of limitations, burdens of proof, standards of accounting, limitations on attorneys fees and forgiveness/interest policies. Congress should also consider requirements forcing the trustee (U.S. Government) to negotiate, litigate and arbitrate in good faith.

The IIM and tribal account balances will be set as of September 30, 1995, subject to individual changes as result of court procedures, error corrections, etc.

32

APPENDIX 1

# ESTABLISHMENT OF A DEVELOPMENT BANK FOR AMERICAN INDIANS

Establishment of a Development Bank for American Indians with the following capital and guarantees to be provided by the U. S. Government:

| | |
|---|---|
| Equity Capital | $500 million |
| Borrowing Capacity | 10 x Equity Capital |
| Initial Borrowing from U. S. | $3 billion for 30 yrs at 30 year T Rate |

The American Indian Trust Fund Management Reform Act of 1994 requires, in part:

"(B) Provisions for opportunities for Indian tribes to assist in the management of their trust accounts and to identify for the Secretary options for the investment of their trust accounts, in a manner consistent with the trust responsibilities of the Secretary, in ways that will help promote economic development in their communities."

The Special Trustee is considering a phase two to the comprehensive strategic plan which will include a Development Bank for American Indians.

A Development Bank (D-Bank) will be formed and capitalized by the federal government. D-Bank will be a nationwide financial institution providing a dependable source of:

A. Lending to American Indians and American Indian tribes and their communities.

B. Investing in American Indian Enterprises.

D-Bank will provide the following principal benefits to American Indians and Indian tribes:

A. Access to long-term loans and investments for economic development, consistent with principles of self-determination, self-governance and self-sufficiency.

B. Access to low interest rates on loans, made possible by D-Bank's tax free status and its access to funding in the nation's capital markets at rates commensurate with those paid by the U. S. Government and Agencies of the U. S. Government.

D-Bank:

A. will be an instrumentality of the federal government and will be backed by the full faith and credit of the U. S. Government.

B. will be examined, supervised and regulated by an Agency of the U. S. Government, existing or to

1

be formed for this purpose.

C. will lend to and invest in various American Indian enterprises, infrastructure projects and other projects of a developmental nature.

D. will facilitate and implement efforts and initiatives to make individual American Indians and American Indian tribes economically more self-sufficient under established principles of self-determination and self-governance.

E. will be a for-profit financial institution and will not receive appropriated funds from the Federal Government for operating expenses. It will receive appropriated funds for lifeline banking services and other specified programs as approved by Congress.

F. may be used to facilitate the disbursement of appropriated funds for other governmental programs for American Indians and their tribes and communities.

G. will have a nationwide delivery network with branch offices located in or near major American Indian communities. The delivery system will also employ a state of the art telecommunications and electronic delivery system.

D-Bank's capital and funding will be provided by the federal government in the following amounts:

1. $500 million in equity contributions from appropriated or judgment funds.

2. $3 billion in direct, long-term loans from the federal government for thirty years at the U.S. Treasury interest rate on thirty year obligations.

3. Future funding of up to 10 times equity capital from the sale of bonds and notes in the nation's capital markets, guaranteed by the full faith and credit of the United States.

D-Bank's initial capital stock will be distributed to federally recognized American Indian tribes in proportion to the number of American Indians living on or near reservations as determined by the latest census information or by some other acceptable means. This permanent capital cannot be sold, traded or withdrawn. Each share will be vested with one voting right for purposes of electing D-Bank's Board of Directors or for voting on other corporate matters requiring shareholder approval.

Each borrower of D-Bank will generally be required to invest in capital stock or participation certificates of D-Bank, generally at the rate of two percent of the loan.

Dividends and patronage payments may be authorized by D-Bank's Board of Directors, subject to regulations that establish minimum at-risk capital standards.

D-Bank will have a corporate structure patterned after banks belonging to the Farm Credit System and will be an instrumentality of the federal government with the full faith and credit backing of the United States.

2

D-Bank's Board of Directors will consist of 10 to 20 members, the majority of whom must be American Indians. The Board will be diversified by tribe, area of the country, borrowing relationships and will include members from the public at large.

D-Bank's executive management and employees will be qualified bankers and will be exempt from federal government employment requirements. Compensation will be determined by the Board of Directors after taking into account general compensation and benefits schedules of the Farm Credit System banks.

D-Bank's lending, leasing, investment and financial services will be dedicated and restricted solely to making loans, leases, investments and financial services available to eligible and qualified American Indians and American Indian tribes and their communities in all areas of the country. Prudential, safe and sound lending and investment policies and practices will be strictly followed and enforced.

D-Bank will charge appropriate fees and interest rates for its financial services and products, sufficient to cover funding, operating and administrative expenses and to provide a reasonable return on shareholder's equity.

D-Bank will provide a full range of commercial, real estate and consumer loans to eligible American Indians, tribes and their communities.

**Investment in Community Development and American Indian Businesses: $125 million**

D-Bank will be authorized to invest up to 25% (initially, $125 million) of its permanent capital in eligible individual Indian and Indian tribe business ventures and projects which will aid economic development of the American Indian communities. These investments will include common stock, preferred stock and long-term subordinated debt investments in:

   A. Infrastructure Acquisition and Development Activities

   B. Project Financing

   C. Venture Capital Businesses

   D. Established Businesses

**Investment in Fractionated Realty Interests: $300 million**

D-Bank will be allowed to invest up to $300 million in the purchase, holding, financing and sale of fractionated realty interests in Indian allotment lands. Such purchases and financings will be made on prudential terms to eligible individuals and tribes. Such activities will be regulated by rules set forth in legislation to resolve the fractionated heirship issues which has as its principal purposes:

   A. The consolidation of existing fractional interests.

   B. The prevention or substantial reduction of further fractionation.

3

D-Bank will be required to have an annual audit and report from an independent and qualified accounting firm.

D-Bank will be exempt from all federal and state taxes.

D-Bank's pro-forma balance sheet is as follows:

4

# D-BANK PRO-FORMA BALANCE SHEET
## BANKING OPERATIONS
### ($millions)

| ASSETS | | *LIABILITIES | |
|---|---|---|---|
| Cash, Securities and Liquid Assets | 500 | Demand Deposits | 0 |
| | | Savings & CDS | 0 |
| | | Official Checks | 0 |
| Loans: | 2,500 | | |
|   . Commercial | | | |
|   Consumer | | | |
|   Real Estate | | | |
|   . Infrastructure | | | |
| Fractionated Realty Holdings: | 300 | Long-term Debt: | 3,000 |
|   Loans to Facilitate Investment Holdings | |   Note to U. S. Treasury 30 yrs.; 30 yr. T Rate | |
| Development Investments: | 125 | Other Debt: | 0 |
|   Infrastructure Acquisition & Development | |   Limited to 10 x Equity Capital, including long-term debt | |
|   Project Financing | | | |
|   Venture Capital to New Businesses | | | |
|   Capital for Established Businesses | | | |
| Other | 75 | Equity Capital | 500 |
| Total Assets | 3,500 | Total Liabilities and Capital | 3,500 |

*All deposits and liabilities guaranteed by the United States

5

## D-BANK SUMMARY OF FINANCIAL SERVICES

**LOANS AND LEASES:**

| | | | |
|---|---|---|---|
| Commercial: | Small Business | Middle Market | Agriculture |
| Consumer: | Credit Card | Home Equity | Auto |
| | Mobile Home | Personal | |
| Real Estate: | Single Family | Multiple Family | Commercial |
| | Acquisition | Development | Construction |
| Infrastructure: | Acquisition | Development | Project Financing |

**FRACTIONATED REALTY HOLDINGS:**

| | | | |
|---|---|---|---|
| Purchases | Sales | Investments | Loans to Facilitate: Individual & Tribal |

**DEVELOPMENT INVESTMENTS:**

| | | | |
|---|---|---|---|
| Project Financing | Infrastructure Acquisition & Development | Venture Capital New Businesses | Capital to Existing Businesses |

**DEPOSITORY SERVICES:**

| | | | |
|---|---|---|---|
| Demand Deposits | Savings Deposits | Other Deposits | Certificates of Deposit |

**OTHER SERVICES:**

| | | | |
|---|---|---|---|
| ATM Access | Cash Management | Accounting | Statements & Reporting |
| Payments | Disbursements | Wire Transfer | Money Orders |
| Official Checks | Overdraft Protection | Discount Brokerage | Mutual Fund Sales |
| Insurance Sales | Annuity Sales | | |

6

# OFFICE OF TRUST FUNDS MANAGEMENT
## PRO-FORMA BALANCE SHEET AND TRUST SERVICES
($millions)

### TRUST OPERATIONS:

| Assets: | | Liabilities: | |
|---|---|---|---|
| Cash, Securities and Liquid Assets | 2,500 | Trust Accounts: | |
| | | Tribal | 2,000 |
| | | Individual Indian | 500 |
| | 2,500 | | 2,500 |

### TRUST SERVICES:

| | | |
|---|---|---|
| Managed Accounts | Agency Accounts | Custodial Accounts |
| Statements & Reporting | Accounting | Payments/Disbursements |
| Resource, Asset & Lease Management | Cash Management | Investment Services |
| IIM Deposits | Land Records & Ownership Management | Collections |

7

APPENDIX 2

SETTLEMENT PROPOSAL SUMMARY

Type 1 Claims
Settlement Estimate
($ millions)

| Type 1 Settlement Category | Principal | Interest | Total |
|---|---|---|---|
| **1-1. Due From Tribes: Forgiven** | | | |
| 1-1A. Proposed Adjustments | 11.6 | 11.6 | 23.2 |
| 1-1B. Rollover Amounts | 26.1 | 116.9 | 143.0 |
| Total Forgiven | 37.7 | 128.5 | 166.2 |

Note: Total Forgiven amount does not require appropriations or payment from the Judgment Fund.

| | Principal | Interest | Total |
|---|---|---|---|
| **1-2. Due to Tribes** | | | |
| 1-2A. Proposed Adjustments | 10.6 | 14.5 | 25.1 |
| 1-2B. Rollover Amounts | 17.5 | 92.1 | 109.6 |
| Sub-total | 28.1 | 106.6 | 134.7 |
| 1-2C. Interest on Deposits Due To Lag Times Between Collection and Deposit | | 8.2 | 8.2 |
| 1-2D. Interest on Deposits Due to Lag Times Between Deposit At Treasury and Credit To Account of Beneficiary | | .5 | .5 |
| SubTotal Due to Tribes Settlement under 1-2 | 28.1 | 115.3 | 143.4 |

1

Type 1 Claims
Settlement Estimate
($ millions)

| Type 1 Settlement Category | | Principal | Interest | Total |
|---|---|---|---|---|
| 1-3. Due From Tribes: Forgiven | | | | |
| Passed Adjustments: | | | | |
| Principal | 7.6 | | | |
| Interest | 25.4 | | | |
| Total | 33.0 | — | — | — |
| 1-4. Due To Tribes: | | | | |
| Passed Adjustments: | | | | |
| Principal | 3.4 | | | |
| Interest | 5.7 | | | |
| Total | 9.1 | (1) | (1) | (1) |
| 1-5. Disputed Claims Based on Additional Tribal Documentation and Due To Tribes Based on Negotiation, Mediation and Arbitration | | (1) | (1) | (1) |
| 1-6. Reconciled Disbursements with Incomplete Disbursement Voucher Packages | | | | |
| 1-6A. General Settlement of all potential liability for all reconciled disbursements with incomplete disbursement voucher packages. Proceeds will be used to capitalize partially the Development Bank (See Settlement 2-7). | | | | (2) 200 |
| 1-6B. Reconciled Disbursements with Incomplete Disbursement Voucher Packages and Due To Tribes Based on Negotiation, Mediation and Arbitration. | | | | |
| Principal | 4,110 | (1) & (2) | (1) & (2) | 200 |
| Total Type 1 Exposure Arising From Disputes | | (1) & (2) | (1) &(2) | 400 |

(1) None unless Tribes dispute the account balance and bring successful action and receive awards based on negotiation, mediation or arbitration.

(2) It is proposed that the legislation cap the potential liability for Type 1-6B claims at $200 million. Individual awards to a tribe will be capped at 5% of the total reconciled transactions with incomplete disbursement packages for that tribe. The unused portion of the $200 million pool will be used to pay other Type 1 claims with any remaining balance reverting to the U. S. Treasury. General Settlement 1-6A for $200 million will be used to capitalize the development bank (See Settlement 2-7).

Type 2 Claims<br>
Settlement Estimate<br>
($ millions)

| Type 2 Settlement Category | Total |
|---|---|
| **2-1: IIM Account Holders Settlement Proposal** | 281 |
| Specific Settlement of Past Damages to IIM Holders | |
| 1. Amount is equal to estimated reconciliation costs for IIM Accounts. Amount will be invested in IIM pool for benefit of all account holders, past, present and future who will receive a higher yield as a result. | |
| 2. Settlement also includes tax free status for future IIM accounts. | Tax Free Status |
| **2-2: Restoration of IIM Thrift Industry Losses** | 13 |
| Specific Settlement to restore interest lost by IIM account holders because of principal that was lost as a result of IIM Pool investments in obligations of failed thrifts in 1980s. | |
| **2-3: Restoration of Overdraft Interest Clearing Accounts** | 42.2 |
| Specific Settlement to restore $42 million in unidentified Overdraft Interest Clearing Accounts to the IIM Pool. Amount is equivalent to non-earning assets which deprive current IIM account holders of over $2 million in annual income. | |
| **2-4: Miscellaneous OTFM General Ledger Losses** | 28.3 |
| Specific Settlement to clear $28.3 million in general ledger differences, suspense amounts, balancing differences, overdraft losses and other losses. | |

Type 2 Claims Settlement Estimate ($millions) (continued)

| Type 2 Settlement Category | Total |
|---|---|
| 2-5: IIM and Tribal Account Holders Joint Settlement for Systems Improvements | 147 |

Specific Settlement to bring trust management systems up to commercial standards. Amount is the estimated cost to implement the Special Trustee's Strategic Plan over five years. Implementation will ensure that the government takes the actions necessary to provide an accurate and timely accounting to American Indian trust beneficiaries in the future. In this manner the proper discharge of the Secretary's trust responsibilities finally can be accomplished.

2-6: Settlement for Reconciliation Project Unreconciled Transactions

| | |
|---|---|
| 2-6A. General Settlement of potential damages for all Unreconciled Transactions arising from the Reconciliation Project. Proceeds of General Settlement will be used to partially capitalize Development Bank (See Settlement 2-7) | 300 |
| 2-6B. Specific Settlement for the following 32,901 transactions for which supporting documentation could not be located during the Reconciliation Project: | 300 |

| | |
|---|---|
| Receipts: | 1,123.3 |
| Transfers: | 479.6 |
| Disbursements | 808.6 |
| Total | 2,411.5 |

Actual Disbursement Exposure can be computed as:

| | |
|---|---|
| Unreconciled ($ million, absolute value) | 808.6 |
| Less: Positive Disbursements | (73.6) |
| Attorney and Expert Witness Fees | (40.5) |
| Alaska Regional Corporation | 119.5 |
| Principal Disbursement Exposure | 575.1 |
| Interest on Principal | 1,361.8 |
| Total Disbursement Exposure | 1,936.9 |

Attachment C Part 4 to Boswell Declaration 4

0628

Type 2 Claims Settlement Estimate ($millions) (continued)

Type 2 Settlement Category                                                                 Total

$300 million will be disbursed to individual tribes with known unreconciled disbursements. The settlement for each tribe would equal the product of the percentage of each tribe's unreconciled disbursements plus interest (date of inception through 12/31/95) to total unreconciled disbursements plus interest on the total times the settlement amount of $300 million. The excess principal and interest potential liability to the tribes well be considered satisfied by the 2-6A general settlement and by the 2-7 general settlement.

| | |
|---|---|
| Type 2-7: | General Settlement for IIM and Tribal Account Holders Establishment of a Development Bank for American Indians |
| Settlement 2-7: | Establishment of a Development Bank for American Indians with the following capital and guarantees to be provided by the U. S. Government: |

        2-7A. Equity Capital           $500 million
        2-7B. Borrowing Capacity     10 x Equity Capital
        2-7C. Initial Borrowing from U. S.   $3 billion for 30 yrs
                                                         at 30 year T Rate

Settlement 2-7 is intended to settle all other potential claims arising out of the reconciliation project not covered by Type 1 claims and other Type 2 claims and past potential liability for trust mismanagement practices in general. A full explanation of the rationale on this settlement and details on the Development Bank can be found in Appendix 1.

General Settlement 2-7 involves the creation of a federal Development Bank for American Indians (D-Bank) which will be formed and capitalized by the federal government and will be a nationwide financial institution providing a dependable source of lending to American Indians and American Indian Tribes and their communities and a dependable source of investing in American Indian Enterprises.

D-Bank will provide access to long-term loans and investments for economic development, consistent with principles of self-determination, self-governance and self-sufficiency and will provide access to low interest rates on loans, made possible by D-Bank's tax free status and its access to funding in the nation's capital markets at rates commensurate with those paid by the U. S. Government and Agencies of the U. S. Government.

D-Bank will also be allowed to invest up to $300 million in the purchase, holding, financing and sale of fractionated realty interests in Indian allotment lands. Such purchases and financings will be made on prudential terms to eligible individuals and tribes. Such activities will be regulated by rules set forth in legislation to resolve the fractionated heirship issues and will be administered to achieve the consolidation of existing fractional interests and the prevention or substantial reduction of further fractionation.

D-Bank will be a for-profit financial institution and will not receive appropriated funds for operating expenses. It will receive appropriated funds for lifeline financial services and other specified programs as approved by Congress.

D-Bank will be authorized to invest up to 25% (initially $125 million) of its permanent capital in eligible individual Indian and Indian Tribe businesses and projects which will aid economic development of the American Indian communities. These investments include common and preferred stock and long-term subordinated draft investments in:

    A.    Infrastructure Acquisition and Development Activities
    B.    Project Financing
    C.    Venture Capital Businesses
    D.    Established Business

D-Bank's capital and funding will be provided by the federal government in the following amounts:

| | |
|---|---:|
| 2-7A. Equity Capital: | 500 |
| Initial Equity Capital of $500 million will be provided by the federal government as part of Settlement 1-6A ($200 Million) and 2-6A ($300 million). Shares will be distributed to all federally recognized Tribes on some equitable basis set forth in legislation. | |
| 2-7B. Loans from U. S. Government: | 3,000 |
| $3 billion in direct long-term loans will be provided to D-Bank for thirty years at the U. S. Treasury rate for 30 year obligations. | |
| 2-7C. U. S. Government Guaranteed Obligations | 5,000 |
| Future funding of up to 10 times equity capital from the sale of bonds and notes in the nation's capital markets by D-Bank will be guaranteed by the full faith and credit of the United States. Loans from the United States Government of $3 billion are included in this amount. | |

Total Type 2 Claims:

| | |
|---|---:|
| Direct Settlement Obligations: Settlements 2-1 through 2-7A | 1,611.5 |
| Loans from U. S. Government: Settlement 2-7B | 3,000 |
| U. S. Government Guaranteed Obligations of $5 billion, net of $3 billion Loan: Settlement 2-7C | <u>2,000</u> |
| Total Type 2 Claims | 6,611.5 |

0630

Attachment C Part 4 to Boswell Declaration

Summary of Type 1 and Type 2 Claims
Settlement Estimate
($ millions)

| Settlement Category | Principal | Interest | Total |
|---|---|---|---|
| 1-1. Due From Tribes: Forgiven | | | |
|     1-1A. Proposed Adjustments | 11.6 | 11.6 | 23.2 |
|     1-1B. Rollover Amounts | 26.1 | 116.9 | 143.0 |
|     Total Forgiven (Does not require appropriations) | 37.7 | 128.5 | 166.2 |
| 1-2. Due To Tribes: | | | |
|     1-2A. Proposed Adjustments | 10.6 | 14.5 | 25.1 |
|     1-2B. Rollover Amounts | 17.5 | 92.1 | 109.6 |
|     1-2C. Interest on Deposits Due to Lag Times | | 8.2 | 8.2 |
|     1-2D. Interest on Deposits Due to Lag Times (MMS) | — | .5 | .5 |
| SubTotal Type 2 Claims Settlement | 28.1 | 115.3 | 143.4 |
| 1-3. Due From Tribes: Forgiven Passed Adjustments | - | - | - |
| 1-4. Due To Tribes: Passed Adjustments | (1) | (1) | (1) |
| 1-5. Disputed Claims Settled by Negotiation or Arbitration | (1) | (1) | (1) |
| 1-6. Reconciled Disbursements with Incomplete Packages | | | |
|     1-6A. General Settlement. Proceeds to D-Bank | | | 200 |
|     1-6B. Payable to Tribes after Negotiation/Arbitration | (1) | (1) | 200 |
| SubTotal Type 1-3 through 1-6 Claims Settlements | - | - | 400 |
| 2-1. IIM Account Holders Settlement Proposal | 281 | | 281 |
| 2-2. Restoration of IIM Thrift Industry Losses | | 13 | 13 |
| 2-3. Restoration of Overdraft Interest Clearing Accounts | 42.2 | | 42.2 |
| 2-4. Miscellaneous OTFM General Ledger Losses | 28.3 | | 28.3 |
| 2-5. IIM and Tribal Account Holders Joint Settlement for Implementation of Special Trustee's Strategic Plan | 147 | | 147 |
| 2-6. Settlement for Unreconciled Transactions | | | |
|     2-6A. General Settlement. Proceeds to D-Bank | 300 | | 300 |
|     2-6B. Payable to Individual Tribes. Capped at $300m. | 300 | | 300 |
| 2-7. General Settlement for IIM and Tribal Account Holders | | | |
|     2-7A. Equity Capital for Development Bank provided by Settlements 1-6A & 2-6A | 500 | | 500 |
|     2-7B. Loans from U.S. Government | 3,000 | | 3,000 |
|     2-7C. U.S. Guaranteed obligations of D-Bank of $5 billion, net of $3 billion loan | 2,000 | | 2,000 |
| Total Type 2 Claims Settlement | 6,598.5 | 13 | 6,611.5 |

---

**Total All Claims Settlements**

| | |
|---|---|
| 1. Forgiven Amounts | 166.2 |
| 2. A. Total Type 1 and Type 2 Claims Settlement Direct Obligations, net of $500 million capital for D-Bank which was double counted (See Settlements 1-6A, 2-6A & 2-7A) & net of U.S. Loans & Guarantees of $5 billion | 1,654.9 |
|     B. Loans $3,000 and guarantees $2,000 from U.S. | 5,000.0 |
| Total Claims Settlements including Forgiven Amounts | 6,821.1 |

(1) None unless tribes dispute account balance and bring successful negotiation/arbitration action.

Attachment C Part 4 to Boswell Declaration

0631