IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____

| | | |
|---|---|---|
| | ) | |
| Assiniboine & Sioux Tribes of the Fort | ) | Civil Action No. 02-0035 (JR) |
| Peck Indian Reservation v. Norton, *et al.*, | ) | |
| | ) | |
| Standing Rock Sioux Tribe v. Norton, *et al.*, | ) | Civil Action No. 02-0040 (JR) |
| | ) | |
| Three Affiliated Tribes of the Fort | ) | Civil Action No. 02-0253 (JR) |
| Berthold Reservation v. Norton, *et al.*, | ) | |
| | ) | |
| Shoshone-Bannock Tribes of the Fort | ) | Civil Action No. 02-0254 (JR) |
| Hall Reservation v. Norton, *et al.*, | ) | |
| | ) | |
| Chippewa Cree Tribe of the Rocky Boy's | ) | Civil Action No. 02-0276 (JR) |
| Reservation v. Norton, *et al.*, | ) | |
| | ) | |
| Yankton Sioux Tribe v. Norton, *et al.*, | ) | Civil Action No. 03-1603 (JR) |
| | ) | |
| Osage Tribe of Indians of Oklahoma | ) | Civil Action No. 04-0283 (JR) |
| v. United States of America, *et al.*, | ) | |
| | ) | |
| Crow Creek Sioux Tribe | ) | Civil Action No. 04-0900 (JR) |
| v. Kempthorne, *et al.*, | ) | |
| | ) | |
| Omaha Tribe of Nebraska | ) | Civil Action No. 04-0901 (JR) |
| v. Kempthorne, *et al.*, | ) | |
| | ) | |
| Oglala Sioux Tribe v. Kempthorne, *et al.*, | ) | Civil Action No. 04-1126 (JR) |
| | ) | |
| The Confederated Tribes of the Colville | ) | Civil Action No. 05-2471 (JR) |
| Reservation v. Norton, *et al.*, | ) | |
| | ) | |
| Wyandot Nation of Kansas | ) | Civil Action No. 05-2491 (JR) |
| v. Kempthorne, *et al.*, | ) | |
| | ) | |
| Rosebud Sioux Tribe v. Kempthorne, *et al.*, | ) | Civil Action No. 05-2492 (JR) |
| | ) | |
| Winnebago Tribe of Nebraska | ) | Civil Action No. 05-2493 (JR) |
| v. Kempthorne, *et al.*, | ) | |
| | ) | |
| Lower Brule Sioux Tribe | ) | Civil Action No. 05-2495 (JR) |
| v. Kempthorne, *et al.*, | ) | |
| | ) | |
| Prairie Band of Potawatomi Nation | ) | Civil Action No. 05-2496 (JR) |

| | | |
|---|---|---|
| v. Kempthorne, *et al.*, | ) | |
| | ) | |
| Te-Moak Tribe of Western Shoshone | ) | Civil Action No. 05-2500 (JR) |
| Indians v. Norton, *et al.*, | ) | |
| | ) | |
| Cheyenne River Sioux Tribe | ) | Civil Action No. 06-1897 (JR) |
| v. Kempthorne, *et al.*, | ) | |
| | ) | |
| Stillaguamish Tribe of Indians | ) | Civil Action No. 06-1898 (JR) |
| v. Kempthorne, *et al.*, | ) | |
| | ) | |
| Iowa Tribe of Kansas and Nebraska | ) | Civil Action No. 06-1899 (JR) |
| v. Kempthorne, *et al.*, | ) | |
| | ) | |
| Confederated Tribes of the Goshute | ) | Civil Action No. 06-1902 (JR) |
| Reservation v. Kempthorne, *et al.*, | ) | |
| | ) | |
| Muskogee (Creek) Nation of Oklahoma | ) | Civil Action No. 06-2161 (JR) |
| v. Kempthorne, *et al.*, | ) | |
| | ) | |
| Eastern Shawnee Tribe of Oklahoma | ) | Civil Action No. 06-2162 (JR) |
| v. Kempthorne, *et al.*, | ) | |
| | ) | |
| Northwestern Band of Shoshone | ) | Civil Action No. 06-2163 (JR) |
| v. Kempthorne, *et al.*, | ) | |
| | ) | |
| Red Cliff Band of Lake Superior Indians | ) | Civil Action No. 06-2164 (JR) |
| Indians v. Kempthorne, *et al.*, | ) | |
| | ) | |
| Pechanga Band of Luiseno Mission Indians | ) | Civil Action No. 06-2206 (JR) |
| v. Kempthorne, *et al.*, | ) | |
| | ) | |
| Colorado River Indian Tribes | ) | Civil Action No. 06-2212 (JR) |
| v. Kempthorne, *et al.*, | ) | |
| | ) | |
| Tohono O'Odham Nation | ) | Civil Action No. 06-2236 (JR) |
| v. Kempthorne, *et al.*, | ) | |
| | ) | |
| Nez Perce Tribe, *et al.*, | ) | Civil Action No. 06-2239 (JR) |
| v. Kempthorne, *et al.*, | ) | |
| | ) | |
| Passamaquoddy Tribe of Maine | ) | Civil Action No. 06-2240 (JR) |
| v. Kempthorne, *et al.*, | ) | |
| | ) | |
| Salt River Pima-Maricopa Indian | ) | Civil Action No. 06-2241 (JR) |
| Community v. Kempthorne, *et al.*, | ) | |

|  |  |  |
|---|---|---|
| | ) | |
| Coeur D'Alene Tribe v. Kempthorne, *et al.*, | ) | Civil Action No. 06-2242 (JR) |
| | ) | |
| Ak-Chin Indian Community | ) | Civil Action No. 06-2245 (JR) |
| v. Kempthorne, *et al.*, | ) | |
| | ) | |
| Sokaogon Chippewa Community | ) | Civil Action No. 06-2247 (JR) |
| v. Kempthorne, *et al.*, | ) | |
| | ) | |
| Gila River Indian Community | ) | Civil Action No. 06-2249 (JR) |
| v. Kempthorne, *et al.*, | ) | |
| | ) | |
| Northern Cheyenne Tribe of Indians | ) | Civil Action No. 06-2250 (JR) |
| v. Kempthorne, *et al.*, | ) | |
| | ) | |
| Haudenosaunee: The Onondaga Nation | ) | Civil Action No. 06-2254 (JR) |
| v. Kempthorne, *et al.*, | ) | |
| _____ | ) | |

**DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN REPLY TO PLAINTIFFS' MEMORANDA IN OPPOSITION TO DEFENDANTS' MOTION FOR REMAND AND TEMPORARY STAY OF LITIGATION**

# TABLE OF CONTENTS

I.     INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . - 1 -

II.    APPLICATION OF BOTH THE PRIMARY JURISDICTION DOCTRINE AND A
       VOLUNTARY REMAND PROVIDES A LOGICAL AND EXPEDITIOUS PATH
       TOWARD RESOLUTION OF THE COMPLICATED TECHNICAL, LEGAL,
       FACTUAL, AND POLICY ISSUES RELEVANT TO THESE CASES. . . . . . . . . . . . - 5 -

       A.     Application of the Primary Jurisdiction Doctrine Materially Aids the Court and
              Properly Results in Remand. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . - 5 -

              1.     The Primary Jurisdiction Doctrine Applies, Despite Plaintiffs' Attempt to
                     Characterize Their Claims as a "Trust Enforcement Action" Outside of the
                     Administrative Procedure Act. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . - 5 -

              2.     Primary Jurisdiction Applies When, as in this Case, the Secretary of the
                     Interior Has the Special Expertise and the Responsibility to Implement a
                     Complex Statutory Scheme. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . - 10 -

       B.     Substantial and Legitimate Grounds Weigh in Favor of Voluntary Remand.
              . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . - 15 -

       C.     The Court Should Not Prematurely Decide the Scope of Defendants' Duty to
              Account or Inappropriately Restrict the Secretary of the Interior's Delegated
              Decisionmaking Discretion Before Granting Defendants' Remand Motion.  . - 16 -

       D.     This Court Should Consider Mr. Swimmer's Declaration, As He Can Speak to the
              Agency's Institutional Knowledge and Any Attempts to Depose Him in These
              Cases is Improper. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . - 21 -

III.   IT IS PROPER TO STAY THE LITIGATION OF THESE CASES DURING THE
       REMAND PERIOD, WHILE INTERIOR COMPLETES ITS TRIBAL ACCOUNTING
       PLAN. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . - 23 -

IV.    CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . - 25 -

# TABLE OF AUTHORITIES

## FEDERAL CASES

Allnet Comm'n v. Nat'l Exch. Carrier Ass'n, 965 F.2d 1118, 1122 (D.C. Cir. 1992) . . . . . . . 7, 8

Am. Ass'n. of Cruise Passengers v. Cunard Line, Ltd., 31 F.3d 1184 (1994) . . . . . . . . . . . 11, 23

Central Power & Light Co. v. United States, 634 F.2d 137, 145 (5th Cir. 1980) . . . . . . . . . . . 16

Citizens for Balanced Env't & Transp., Inc. v. Volpe, 650 F.2d 455, 460 (2d. Cir. 1981) . . . . . 19

Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 415 (1971) . . . . . . . . . . . . . . 18

Cobell v. Babbitt, 240 F.3d 1081, 1099 (D.C. Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . 7, 9, 20

Cobell v. Babbitt, 91 F. Supp. 2d 1, 29 (D.D.C. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 8

Cobell v. Kempthorne, 455 F.3d 301, 306 (D.C. Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8, 19

Cobell v. Norton, 392 F.3d 461, 473 (D.C. Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Cobell v. Norton, 428 F.3d 1070, 1079 (D.C. Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Far East Conference v. United States, 342 U.S. 570, 574 (1952) . . . . . . . . . . . . . . . . . . . . . . . 11

Federal Power Comm'n v. Transcontinental Gas Pipe Line Corp., 423 U.S. 326, 333 (1976)
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Firestone Tire and Rubber Co. v. Bruch, 489 U.S. 101, 111 (1989) . . . . . . . . . . . . . . . . . . . . . . 9

Florida Power & Light Co. v. Lorion, 470 U.S. 729, 743-44 (U.S. 1985) . . . . . . . . . . . . . . . . . 23

Ford Motor Co. v. Nat'l Labor Relations Bd., 305 U.S. 364, 373 (1939) . . . . . . . . . . . . . . . . . 16

General American Tank Car Corp. v. El Dorado Terminal Co., 308 US 422, 432-33 (1940)
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

Golden Hill Paugussett Tribe of Indians v. Weicker, 39 F.3d 51, 59 (2d. Cir. 1994) . . . . . . . 8, 11

Hutchinson v. Tenet, 2003 U.S. Dist. LEXIS 26182 (D.D.C. 2003) . . . . . . . . . . . . . . . . . . . . . 22

Laborers' Int'l Union v. United States Dep't of Justice, 578 F. Supp. 52, 56 (D.D.C. 1983) . . . 22

Loma Linda Univ. v. Schweiker, 705 F.2d 1123, 1127 (9th Cir. 1983) . . . . . . . . . . . . . . . . . . . 16

Lujan v. Nat'l Wildife Fed'n, 497 U.S. 871, 882 (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Marshall County Health Care Auth. v. Shalala, 988 F.2d 1221, 1226 (D.C. Cir. 1993) . . . . . . . 23

Mashpee Wampanoag Tribal Council, Inc. v. Norton, 336 F.3d 1094, 1101 (D.C. Cir. 2003)
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Nader v. Allegheny Airlines, 426 U.S. 290, 304 (1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7

Nat'l Tank Truck Carriers v. EPA, 907 F.2d 177, 185 (D.C. Cir. 1990) . . . . . . . . . . . . . . . . . . 19

Navel Orange Admin. Comm. v. Easter Orange Co., 722 F.2d 449, 453 (9th Cir. 1983) . . . . . . 22

Norton v. Southern Utah Wilderness Alliance, 542 U.S. 55 (2004) . . . . . . . . . . . . . . . . 9, 10 , 17

Rhoades v. Avon Products, No. 05-56047, 2007 WL 2983757 (9th Cir. Oct. 15, 2007) . . . . . . 21

Ricci v. Chicago Mercantile Exch., 409 U.S. 289, 305-06 (1973) . . . . . . . . . . . . . . . . . . 5, 11, 17

SafeCard Services, Inc. v. SEC, 926 F.2d 1197, 1200 (D.C. Cir. 1991) . . . . . . . . . . . . . . . . . . 23

Shakeproof Assembly Components Div. of Illinois Tool Works, Inc. v. United States, 412 F.
Supp. 2d 1330, 1336-1337 (Ct. Int'l Trade 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

U.S. v. Western Pac. R.R. Co., 352 U.S. 59 (1956) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 24

United States v. Chemical Found., 272 U.S. 1, 14-15 (1926) . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Vermont Yankee Nuclear Power Corp. v. Nat'l. Res. Def. Council, 435 U.S. 519 (1978) . . . 18,19

Washington Cent. R.R. Co. v. Nat'l Mediation Bd., 830 F. Supp. 1343, 1353 (E.D. Wash. 1993)
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

PENDING CASES

*Ak-Chin Indian Community v. Kempthorne,* No. 06-cv-02245-JR
        (D.D.C. Dec. 29, 2006) ) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

*Assiniboine & Sioux Tribes of the Fort Peck Reservation v. Kempthorne,*
        No. 02-cv-00035-JR (D.D.C. Jan. 1, 2002) ) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

*Coeur d'Alene Tribe v. Kempthorne,* No. 06-cv-02242 (D.D.C. Dec. 29, 2006)) . . . . . . . . . . . . 1

*Confederated Tribes of the Colville Reservation v. Kempthorne,* No. 05-cv-02471

(D.D.C. Dec. 27, 2005)) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 14

*Eastern Shawnee Tribe of Oklahoma v. Kempthorne,* No. 06-cv-02162-JR
    (D.D.C. Dec. 20, 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Gila River Indian Community v. Kempthorne,* No. 06-cv-02249-JR
    (D.D.C. Dec. 29, 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

*Lower Brule Sioux Tribe v. Kempthorne,* No. 05-cv-02495-JR
    (D.D.C. Dec. 30, 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Nez Perce Tribe v. Kempthorne,* No. 06-cv-02239-JR (D.D.C. Dec. 28, 2006) . . . . . . . . . . . . 1

*Osage Nation of Oklahoma v. Kempthorne,* No. 04-cv-002830-JR
    (D.D.C. Feb. 20, 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

*Passamaquoddy Tribe of Maine v. Kempthorne,* No. 06-cv-02240-JR
    (D.D.C. Dec. 29, 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

*Salt River Pima-Maricopa Indian Community v. Kempthorne,* No. 06-cv-02241-JR
    (D.D.C. Dec. 29, 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

*Shoshone-Bannock Tribes of the Fort Hall Reservation v. Kempthorne,*
    No. 02-cv-00254-JR (D.D.C. Feb. 8, 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

*Standing Rock Sioux Tribe v. Kempthorne,* No. 02-cv-00040-JR (D.D.C. Jan. 8, 2002) . . . . . . . 1

*Tohono O'odham Nation v. Kempthorne,* No. 06-cv-02236-JR (D.D.C. Dec. 29, 2006) . . . . . . . 1

FEDERAL STATUTES

25 U.S.C. § 13 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

25 U.S.C. § 2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

25 U.S.C. § 9 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

25 U.S.C. §§ 4001 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 20

5 U.S.C. §§ 500-706 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 6

25 U.S.C. § 4042(a)(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

FEDERAL REGULATIONS

25 C.F.R. Part 115 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

25 C.F.R. Part 2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 24

25 C.F.R. § 115.803 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

25 C.F.R. § 150.11 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

25 C.F.R. Part 150 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

OTHER AUTHORITIES

Exec. Order No. 2508 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

25 Fed. Reg. 9106 (Dec. 22, 1960) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

Restatements (Second) of Trusts §§ 186-87 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

## I.    INTRODUCTION

Defendants have moved this Court to remand these thirty-seven cases to the Department of the Interior ("Interior") for six short months, in order for Interior to prepare a historical accounting plan for all tribes (including those that have not brought suit).  *See generally* Mem. in Support of Defs.' Mot. for Remand and Stay of Litigation (August 10, 2007) (hereinafter "Defs.' Opening"); Defs.' Mot. for a Remand and Stay of Litigation (August 10, 2007).  Plaintiffs have filed two different sets of papers in opposition to Defendants' remand motion: principal opposition briefs on October 1, 2007,[1] and supplemental opposition briefs on October 22, 2007.[2] Defendants hereby submit the following brief in consolidated reply to Plaintiffs' principal and supplemental opposition papers.

---

[1]    Plaintiffs submitted the following oppositions on Oct. 1, 2007:  (a) Pls.' Joint Mem. in Opposition to Defs.' Mot. for Remand and Stay of Litigation, filed in *Ak-Chin Indian Community v. Kempthorne*, No. 06-02245; *Passamaquoddy Tribe of Maine v. Kempthorne*, No. 06-02240; *Salt River Pima-Maricopa Indian Community v. Kempthorne*, No. 06-02241; and *Tohono O'odham Nation v. Kempthorne*, No. 06-02236, and also on behalf of the other tribes in litigation, except for the Osage Nation and the Gila River Indian Community (hereinafter "Principal Opp."); and (b) Pls.' Mem. of P. & A. in Opposition to Defs.' Mot. for Remand and Stay of Litigation, filed in *Gila River Indian Community v. Kempthorne*, No. 06-02249,  and *Osage Nation of Oklahoma v. Kempthorne*, No. 04-00283 (hereinafter "Osage and Gila River Opp.").

[2]    Plaintiffs submitted the following supplemental oppositions on Oct. 22, 2007:  (a) Pls.' Supplemental Mem. of P. & A. in Opposition to Defs.' Mot. for a Remand and Stay of Litigation, filed in *Nez Perce Tribe v. Kempthorne*, No. 06-02239 (hereinafter "Nez Perce Opp."); (b) Pls.' Supplemental Mem. in Opposition to Defs.' Mot. for Remand and Stay of Litigation, filed in *Coeur d'Alene Tribe v. Kempthorne,* No. 06-02242, and *Confederated Tribes of the Colville Reservation v. Kempthorne*, No. 05-02471 (hereinafter "Colville and Coeur d'Alene Opp."); (c) the Ak-Chin Community's Supplemental Mem. in Opposition to Defs.' Mot. for Remand and Stay of Litigation (hereinafter "Ak-Chin Opp."); and (d) Pls.' Mem. in Opposition to the Defs.' Mot. for Remand and Stay of Litigation, filed in *Assiniboine & Sioux Tribes of the Fort Peck Reservation v. Kempthorne*, No. 02-00035, *Shoshone-Bannock Tribes of the Fort Hall Reservation v. Kempthorne*, No. 02-00254, and *Standing Rock Sioux Tribe v. Kempthorne*, No. 02c-00040 (hereinafter "Assiniboine, Standing Rock, and Shoshone-Bannock Opp.").

Plaintiffs have raised no arguments in their collective oppositions that contradict the simple fact that a remand in these cases provides a logical and expeditious path toward resolution of the complicated technical, legal, factual, and policy issues relevant to these cases. In the situation presently facing this Court—resolving the pending thirty-seven cases which request historical accountings for fifty-four tribes—remand to Interior for the preparation of a historical accounting plan for all tribes will streamline any subsequent judicial proceedings and allow for a more organized and focused review and adjudication of any issues. In contrast to that orderly process, Plaintiffs would have this Court prematurely decide how the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 500-706, and the common law of trusts apply to these cases, along with the scope of any tribal historical accounting. Contrary to Plaintiffs' assertions, it is for Interior, *i.e.*, the agency with the statutory mandate, as well as the expertise, to determine these matters in the first instance. Further, it is only after the completion and issuance of the tribal accounting plan that it would be appropriate to consider which, if any, of Plaintiffs' claims are ripe and suitable for judicial resolution.

Also, Plaintiffs have raised speculative concerns in their oppositions about whether they and other tribes would be able to participate in Interior's preparation of the historical trust accounting plan and whether the agency would continue with pending settlement negotiations during the remand period. *See* Assiniboine, Standing Rock, and Shoshone-Bannock Opp. at 23-24; *see generally* Colville and Coeur d'Alene Opp. Plaintiffs' concerns are unwarranted. As stated in the Declaration of Ross O. Swimmer in Support of Defendants' Mot. for Voluntary Remand (August 10, 2007) (hereinafter "Swimmer Decl."), Interior has stated that it intends to consider these and other issues during the remand. *See* Swimmer Decl. ¶ 22 (stating that Interior

will consider various factors during remand, such as whether or how to solicit the input of tribes and to incorporate ADR and/or other negotiation processes).

Further, Plaintiffs have asserted in the oppositions that, even if the Court were to grant Defendants' remand motion, Plaintiffs should be allowed, nonetheless, to commence or continue with formal discovery.  *See* Principal Opp. at 57-59; Assiniboine, Standing Rock, and Shoshone-Bannock Opp. at 25.  Plaintiffs' assertions are baseless.  It is antithetical for formal discovery to continue during the remand period, especially when Interior will be preoccupied with undertaking and completing the historical trust accounting plan for all tribes, including the ones herein. During remand, the agency will be directing substantial efforts, energies, and resources into the historical accounting plan, so that it can complete the requisite work within the allotted time-frame.  It will not have the time, attention, or resources to focus on responding to Plaintiffs' formal discovery efforts and any discovery-related conflicts that may result therefrom.  Therefore, in the event that the Court determines that a remand of these accounting cases to Interior is appropriate, the Court should also issue a temporary stay of litigation (or continue the current stay), until after Interior has completed the remand and submitted its historical trust accounting plan to the Court, Plaintiffs, and other tribes for consideration.

Additionally, several Plaintiffs have raised various individualized concerns in their supplemental oppositions.  *See, e.g.,* Ak-Chin Opp. at 3-4 (discussing the Ak-Chin Indian Community's concerns about its access to the rights-of-way records kept by the Bureau of Indian Affairs ("BIA") of Interior, and the encroachment of the Phoenix, AZ, metropolitan area on its reservation); Colville and Coeur d'Alene Opp. at 1 (discussing the tribes' participation in the Tribal Trust Fund Settlement Project that is currently being developed by the Inter-Tribal

Monitoring Association ("ITMA") and the Office of Historical Trust Accounting ("OHTA") of the Interior Department);[3] and Nez Perce Opp. at 2-3 (referencing Interior's efforts to propose trust reform and trust claim settlement legislation to Congress, while the agency is seeking stays of litigation in court).[4] These individual tribe-specific concerns reinforce the notion that a remand is the most efficient way for the agency to marshal the competing technical, legal, factual, and policy issues into one coherent tribal accounting plan, while maintaining the agency's discretion to allocate its budget between different priorities.

In short, Plaintiffs' principal and supplemental oppositions are unavailing. Plaintiffs do not present a justifiable basis for the Court to deny Defendants' motion for remand. The Court should grant Defendants' request, remand the trust accounting cases to Interior, and stay the litigation of the cases until after the completion of the remand and the issuance of the historical tribal accounting plan.

---

[3] The Colville and Coeur d'Alene Tribes are not the only litigating tribes that are participating in this Tribal Trust Fund Settlement Project being developed by ITMA and OHTA. Other participating tribes include the Nez Perce Tribe; the Sac and Fox Tribes; and the Gros Ventre and Assiniboine Tribes of the Fort Belknap Indian Community.

[4] Any such legislative efforts by the agency are irrelevant to the proper grant of remand in these trust accounting cases.

II.    **APPLICATION OF BOTH THE PRIMARY JURISDICTION DOCTRINE AND A VOLUNTARY REMAND PROVIDES A LOGICAL AND EXPEDITIOUS PATH TOWARD RESOLUTION OF THE COMPLICATED TECHNICAL, LEGAL, FACTUAL, AND POLICY ISSUES RELEVANT TO THESE CASES.**

A.    Application of the Primary Jurisdiction Doctrine Materially Aids the Court and Properly Results in Remand.

The rationale behind the application of primary jurisdiction doctrine is simple: having the agency with statutory authority over the matter take the first look allows the agency to marshal the technical, legal, factual, and policy issues into a coherent unit, which materially aids the Court in resolving the issues. *See Ricci v. Chicago Mercantile Exch.*, 409 U.S. 289, 305-06 (1973) ("We would recognize 'that the courts, while retaining the final authority to expound the statute, should avail themselves of the aid implicit in the agency's superiority in gathering the relevant facts and in marshaling them into a meaningful pattern.'") (internal citations omitted).  In these trust accounting cases, Defendants have expressly requested remand in order for Interior to prepare one historical accounting plan for all tribes. *See generally* Swimmer Decl.  Plaintiffs unpersuasively argue that the primary jurisdiction doctrine does not apply here, as these cases do not involve the APA and do not concern a regulated industry; Interior does not have expertise in this area; remand will result in delay; and there is no potential for inconsistent outcomes.  None of Plaintiffs' arguments have merit.

1.    The Primary Jurisdiction Doctrine Applies, Despite Plaintiffs' Attempt to Characterize Their Claims as a "Trust Enforcement Action" Outside of the Administrative Procedure Act.

In Plaintiffs' principal opposition, the main argument against the application of primary jurisdiction and voluntary remand in these trust accounting cases depends entirely on the characterization of Plaintiffs' claims as a common law action or as a trust law enforcement action.

*See* Principal Opp. *passim*.  Plaintiffs describe the principal cause of action in the cases as "a pure trust claim" under common law that, "in no way, implicates the substantive or procedural standards of the APA."[5]  *See* Principal Opp. at 40; *see also* Assiniboine, Standing Rock, and Shoshone-Bannock Opp. at 4 (discussing Interior's "common law duty to provide full accountings").  Based on this characterization, Plaintiffs argue that a remand is improper, because the resolution of their common law claims requires no specialized agency knowledge.  *See* Principal Opp. at 62 (citing *Nader v. Allegheny Airlines*, 426 U.S. 290, 304 (1976) (which held that the tort action presented fell within the court's realm and did not require any specialized agency expertise) and arguing that primary jurisdiction does not apply for the same reasons, as these are trust cases).  Plaintiffs' argument is groundless and should be rejected.

Before explaining the baselessness of Plaintiffs' argument, Defendants would point out, as an initial matter, that this Court does not need to address the issue of whether these trust accounting cases are trust law enforcement actions or APA actions, in order to decide Defendants' remand motion.[6]  As the Court of Appeals for the D.C. Circuit has explained in the

---

[5]    Some of the Plaintiffs rightfully concede the applicability of the APA to these proceedings.  *See* Assiniboine, Standing Rock, and Shoshone-Bannock Opp. at 12-13 (noting the D.C. Circuit's consideration of the APA to determine jurisdictional issues and provide a basis for judicial review of agency inaction).  The remaining Plaintiffs assert that they rely on the APA solely for purposes of securing Defendants' waiver of sovereign immunity.  *See* Principal Opp. at 40 n.17.  They claim that the APA serves as an *alternative* and *secondary* right of action under 5 U.S.C. § 706, based on Defendants' purported unreasonable delay in providing accountings. *See id.* at 39.

[6]    If the Court were to determine that the issue should be resolved in order to decide this remand motion, Defendants would request the opportunity to brief the issue fully and separately, as part of a motion to dismiss Plaintiffs' common law and general "trust enforcement" claims. *See Cobell v. Babbitt*, 91 F. Supp. 2d 1, 29 (D.D.C. 1999) ("[t]o the extent that plaintiffs seek relief beyond that provided by statute, their claims must be denied.").

past, the primary jurisdiction doctrine applies even in those situations in which common law remedies are at issue. *See Allnet Commc'n v. Nat'l Exch. Carrier Ass'n*, 965 F.2d 1118, 1122 (D.C. Cir. 1992) (applying primary jurisdiction, staying common law claims until agency had looked at issue and noting that the first primary jurisdiction case "applied to a provision of the Interstate Commerce Act explicitly preserving shippers' common law remedies for common carriers' overcharges."). Even in cases where the doctrine was ultimately held not to apply to common law actions, the courts have recognized that the doctrine may apply and have examined the traditional factors to determine whether primary jurisdiction should apply. *See generally Nader*, 426 U.S. at 290 (analyzing whether common law tort suit was within conventional competence of courts and whether the agency's judgment was likely to be helpful). Therefore, the Court should grant Defendants' remand motion, and decline or defer until later a ruling on whether Plaintiffs have brought APA actions or trust law enforcement actions.

In constructing their principal argument in opposition, Plaintiffs rely on a false premise in asserting that their claims do not arise under the American Indian Trust Fund Management Reform Act ("the 1994 Act"), 25 U.S.C. §§ 4001 *et seq.*, and the judicial review provisions of the APA. Established precedent in this Circuit unequivocally states that the APA applies to trust claims such as those brought by Plaintiffs in the trust accounting cases. *See Cobell v. Kempthorne,* 455 F.3d 301, 306 (D.C. Cir. 2006) ("we have always clearly held that both bodies of law (the law of Trusts *and* the APA) apply."); *id.* at 303 ("both the APA and the common law of trusts apply in this case. . ."); *Cobell v. Norton (Cobell XVII),* 428 F.3d 1070, 1079 (D.C. Cir. 2005) (Interior is entitled to "substantial deference" in its interpretation of the 1994 Act); *Cobell v. Babbitt (Cobell VI),* 240 F.3d 1081, 1099 (D.C. Cir. 2001) (an analysis of the scope of the

Defendants' fiduciary duties requires application of both administrative and trust law principles);
*Cobell v. Babbitt (Cobell V)*, 91 F. Supp. 2d at 28-31 (holding that Plaintiff's statute-based claims
can and, in the absence of an independent private right of action, *must* be brought under the
APA).  Accordingly, the APA's scope and standard of review remains the benchmark guiding this
Court's analysis of the tribal historical accounting plan following remand.  Plaintiffs' claim that
the cases "in no way implicate[] the substantive or procedural standards of the APA" is hollow
and unfounded.

Plaintiffs attempt to evade the APA by claiming that their trust accounting cases sound in
common law, so as to force the application of the *Nader* analysis.  *See* Principal Opp. at 62.
Plaintiffs' effort is unavailing.  In *Allnet*, the D.C. Circuit distinguished *Nader* on the basis that
the issue presented fell squarely within the agency's expertise.  965 F.2d at 1123.  The same
analysis here; preparation of a tribal historical accounting plan falls squarely within Interior's
expertise.  *See also Golden Hill Paugussett Tribe of Indians v. Weicker*, 39 F.3d 51, 59 (2d. Cir.
1994) ("whether there should be judicial forbearance hinges therefore on the authority Congress
delegated to the agency in the legislative scheme.") (citing *Ricci*, 409 U.S. at 304).  The claims in
the instant cases are unlike the pure common law claims at issue in *Nader*.  This conclusion is
consistent with the D.C. Circuit's ruling that both administrative and trust law have their
respective places in these cases.  *See, e.g., Cobell*, 455 F.3d at 303-07.

Even assuming *arguendo* that this Court accedes to Plaintiffs' demands and signals its
intent to apply private trust law and common law principles to these trust accounting cases,
Interior, as trustee, still should be permitted to exercise the discretion with which it has been
endowed by the operative trust instrument.  "'[A] court of equity will not interfere to control

- 8 -

[trustees] in the exercise of a *discretion vested in them by the instrument under which they act.*"

*Cobell v. Norton (Cobell XIII),* 392 F.3d 461, 473 (D.C. Cir. 2004) (emphasis added) (citing

*Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 111 (1989); *see also* Restatement

(Second) of Trusts §§ 186-87. Trustees generally have discretion to construe disputed or doubtful

terms in a trust instrument. Restatement (Second) of Trusts § 187; *see also Cobell VI*, 240 F.3d at

1101 (where the trust instrument (here, the 1994 Act) entrusted to an agency is ambiguous, the

agency's interpretation is entitled to careful consideration). Moreover, trustees generally can

choose the time, manner, and extent of their exercise of discretion. Restatement (Second) of

Trusts § 187. Contrary to some Plaintiffs' suggestion, Assiniboine, Standing Rock, and

Shoshone-Bannock Opp. at 2-3; 17-18, allowing Interior to wield its discretion in these trust

accounting cases is not the same as interpreting away the agency's obligations. Rather, it permits

Interior to deploy its particular expertise in advance of consideration by the Court, thus

facilitating and making more efficient the judicial review process.

Plaintiffs would have this Court sit as a private-law chancellor and dictate how Interior

should comply with its broad statutory duties under the 1994 Act, thus depriving the agency of its

Congressionally-bestowed discretion as trustee and determining the nature and scope of the

agency's obligations without any input from the agency itself. *See* Principal Opp. at 43;

Assiniboine, Standing Rock, and Shoshone-Bannock Opp. at 14. This request is inappropriate

and should be rejected. The APA does not permit the Court to assume a chancellor-in-equity role.

Under prevailing Supreme Court precedent interpreting the APA, judicial review is

narrow and limited, and agencies have latitude to implement the broad directives assigned by

Congress. In *Norton v. Southern Utah Wilderness Alliance*, 542 U.S. 55 (2004), the Supreme

Court stated:

> The principal purpose of the APA limitations we have discussed—and of the traditional limitations upon mandamus from which they were derived—is to protect agencies from undue judicial interference with their lawful discretion, and to avoid judicial entanglement in abstract policy disagreements which the courts lack both expertise and information to resolve. If courts were empowered to enter general orders compelling compliance with broad statutory mandates, they would necessarily be empowered, as well, to determine whether compliance was achieved—which would mean that it would ultimately become the task of the supervising court, rather than the agency, to work out compliance with the broad statutory mandate, injecting the judge into day-to-day agency management.

542 U.S. at 66-67. This Court should adopt the Supreme Court's reasoning, recognize the primary jurisdiction of Interior in these trust accounting cases, reject Plaintiffs' attempts to insert themselves and the Court prematurely and inappropriately into the administrative process, and remand these cases so that Interior can appropriately work out compliance with its statutory mandate under the 1994 Act in the first instance.

2.  <u>Primary Jurisdiction Applies When, as in this Case, the Secretary of the Interior Has the Special Expertise and the Responsibility to Implement a Complex Statutory Scheme.</u>

Plaintiffs incorrectly limit the application of the primary jurisdiction doctrine to cases "concerning the so-called regulated industries." *See* Principal Opp. at 63-64; Assiniboine, Standing Rock, and Shoshone-Bannock Opp. at 19. Plaintiffs' argument ignores the rationale underlying the rulings in the cases upon which they rely. For example, in *U.S. v. Western Pac. R.R. Co.*, 352 U.S. 59 (1956), the Court applied the primary jurisdiction doctrine based on the need for a resolution of policy and technical issues by the agency. *Id.* at 66 ("[W]here words in a tariff are used in a peculiar or technical sense, and where extrinsic evidence is necessary to determine their meaning or proper application, so that 'the inquiry is essentially one of fact and of

- 10 -

discretion in technical matters,' then the issue of tariff application must first go to the [agency]."). The same rationale applies here; given the technical nature of the accounting-related issues and claims, this Court should remand the trust accounting cases to Interior, so the agency can conduct its fact-based inquiry, apply its technical expertise, exercise its discretion in technical matters, and make the appropriate determinations regarding a historical tribal accounting plan.  Further, primary jurisdiction has been properly applied in numerous other areas of law, including Indian law.  *See, e.g., Golden Hill Paugussett Tribe of Indians v. Weicker*, 39 F.3d 51, 60 (2d. Cir. 1994) (issues of fact not within the ordinary ken of judges requiring administrative expertise should be decided preliminarily by the agency, even though those same facts later serve as a "premise for legal consequences to be judicially defined.") (quoting *Far East Conference v. United States*, 342 U.S. 570, 574 (1952))).

Contrary to Plaintiffs' representations, there is no doubt that Interior has Congressionally-mandated subject matter expertise over the administration of this trust.  Plaintiffs claim that Interior does not have the technical expertise required for the application of primary jurisdiction. *See* Assiniboine, Standing Rock, and Shoshone-Bannock Opp. at 21.  Primary jurisdiction and expertise depend on the statute at issue in the case.  *Compare Am. Ass'n. of Cruise Passengers v. Cunard Line, Ltd.*, 31 F.3d 1184 (D.C. Cir. 1994) *with Ricci*, 409 U.S. at 289.  Here, the primary statute is the 1994 Act.  There can be no question that Congress delegated the implementation of the 1994 Act, in particular, the determination regarding historical trust accounting, to Interior.  As detailed by the Special Trustee for American Indians, Interior has to make numerous legal, policy, technical, and factual decisions in formulating a historical accounting plan for tribes, while, at the same time, deciding how to factor into the plan the unique attributes and history of a specific

- 11 -

tribe.  *See* Swimmer Decl. ¶¶ 22-26.

Moreover, as Plaintiffs point out, an agency's experience and knowledge of the "industry" establish the agency's expertise.  *See* Assiniboine, Standing Rock, and Shoshone-Bannock Opp. at 21.  Congress has generally delegated matters regarding Indian affairs to Interior, in several basic statutes:

- 25 U.S.C. § 9, provides that, "[t]he President may prescribe such regulations as he may think fit for carrying into effect the various provisions of any act relating to Indian affairs, and for *the settlement of the accounts of Indian affairs*."  (Emphasis added.)

- 25 U.S.C. § 2 provides that "the Commissioner of Indian affairs shall, under the direction of the Secretary of the Interior, . . . have the management of all Indian Affairs and all matters arising out of Indian relations."

- 25 U.S.C. § 13 (or the Snyder Act) provides in pertinent part that "the Bureau of Indian Affairs, under the supervision of the Secretary of the Interior, shall direct, supervise, and expend such monies as Congress may from time to time appropriate, for the . . . general administration of Indian property."

In addition to these general statutes, Congress has specifically delegated to Interior under the 1994 Act the responsibility for tribal trust funds management.  Taken as a whole, the statutes form a complex scheme that endows Interior with the regulatory and administrative authority and jurisdiction over Indian affairs, particularly in the area of trust funds and property management. Additionally, there are a host of potentially applicable regulations.  *See, e.g.,* Trust Funds for Tribes and Individual Indians, 25 C.F.R. Part 115 (2007); Land Records and Title Documents, 25

C.F.R. Part 150 (2007); Appeals from Administrative Action, 25 C.F.R. Part 2 (2007). Given this backdrop of statutory and regulatory provisions, it is clear that Congress has entrusted Indian affairs to Interior, thus providing the necessary predicate for application of the primary jurisdiction doctrine. And most important to the matter at issue, Interior is the agency with the historical experience and knowledge of tribal trust accounts.[7] *See* Swimmer Decl. ¶¶ 4-19.

Plaintiffs argue that this Court should not apply the primary jurisdiction doctrine in these trust accounting cases, because, in their view, Interior has delayed in coming forth with a historical accounting plan. *See* Principal Opp. at 66-67; Assiniboine, Standing Rock, and Shoshone-Bannock Opp. at 21-22. Plaintiffs make numerous allegations about Interior's behavior resulting in delay.[8] *Id. passim.* These allegations are insufficient, however, to defeat Defendants' remand motion.

As set forth in the Swimmer declaration, Interior conducted a project in the 1990s to reconcile the trust funds of numerous tribes (Tribal Reconciliation Project or "TRP") and provided to those tribes the reconciliation project results. *See* Swimmer Decl. ¶ 8. Only a fraction of the tribes with cases before this Court disputed the results; many did not even return the requisite attestation forms. *Id.* Based on this lack of response, before 2007, Interior had

---

[7]    Plaintiffs' statements regarding Defendants control of the trust records, Principal Opp. at 58, reveals Plaintiffs' acknowledgment that it is Interior that has maintained and, in many cases, generated the relevant records and, therefore, is in the best position to interpret them.

[8]    In their principal opposition, Plaintiffs base many of the allegations regarding delay on selective excerpts cherry-picked from various reports and filed as exhibits to the opposition. Defendants take the position that, in general, the exhibits speak for themselves. Defendants disagree strenuously, however, with Plaintiffs' allegations regarding record retention and missing records. *Compare* Principal Opp. at 9 *with* Swimmer Decl. ¶ 11 (discussing the establishment of the American Indian Records Repository).

focused its tribal accounting efforts on addressing, on a case-by-case basis, the accounting issues

that had been raised by the tribes that had disputed their TRP results and filed their litigation prior

to 2006.  *See* Swimmer Decl. ¶ 16.  Almost all of the tribes that filed suit before 2006 expressed

an interest in pursuing possible resolution of their trust accounting claims (as well as their actual

or potential trust mismanagement claims), through informal settlement discussions or alternative

dispute resolution ("ADR") and without the need for protracted litigation.  *See*, *e.g.,* Joint Mot.

for Temporary Stay of Litigation Supporting Exhibit and Proposed Order ¶ 7 (March 28, 2007)

*Lower Brule Sioux Tribe v. Kempthorne*, No. 05-2495 (D.D.C.); Parties Joint Mot. and

Supporting Joint Status Report for Extension of Temporary Stay of Litigation and Proposed Order

(June 29, 2007) *Lower Brule Sioux Tribe v. Kempthorne*, No. 05-2495 (D.D.C.).  Further, many

of the tribes that brought suit in November and December, 2006, followed this same path.  *See,*

*e.g.,* Joint Mot. for Temporary Stay of Litigation, Supporting Exhibit and Proposed Order (Feb.

26, 2007) *Eastern Shawnee Tribe of Oklahoma v. Kempthorne*, No. 06-2162 (D.D.C.).  To this

day, many of the tribes currently in litigation against Defendants, including many of those in the

thirty-seven tribal trust accounting cases pending before this Court, continue to express the same

sentiment.  *See generally* Pl.'s Unopposed Mot. to Extend Temporary Stay of Proceedings

(August 7, 2007) *Colville v. Kempthorne*, No. 05-2471 (D.D.C.).

 Given the tribes' sentiment, Interior has sought to devote its limited resources to resolving

accounting disputes on a case-by-case and tribe-by-tribe basis and to investigating and developing

measures (such as the Tribal Trust Fund Settlement Project, currently being developed between

ITMA and OHTA) that might be deemed broadly acceptable to all tribes. This approach has

resulted in Interior's collection and analysis of a large body of documents and data applicable to

all tribal accounting issues. Based on this and other reasons, Defendants have proposed that they be given six months after the Court issues an order granting the remand, for Interior to undertake and present a plan for a unified historical accounting plan for all tribes. There is no merit to Plaintiffs' contentions that Defendants' remand request will result in delay.

In making their assertion about inconsistent outcomes, Plaintiffs misrepresent the arguments made by Defendants. Plaintiffs claim that Defendants argued only that remand will avoid the potential for inconsistencies between the executive and judicial branches, and did not argue the potential for inconsistent, multiple judicial outcomes. *See* Principal Opp. at 71. This claim is unfounded. Defendants actually made both arguments: a remand would lessen not only the potential for conflict between the executive and the judicial branches, but also the potential for competing judicial orders. Defendants' opening memorandum states "[remand should be granted] to avoid court orders or other litigation developments from placing inconsistent demands upon Interior." *See* Defs.' Opening at 28; *see also id.* at 22 ("providing Interior the opportunity to craft a systematic and programmatic approach, lessens the potential for inconsistent conflicting outcomes given that twenty-eight judges are handling these cases.").

B.    <u>Substantial and Legitimate Grounds Weigh in Favor of Voluntary Remand.</u>

Plaintiffs oppose the application of a voluntary remand, *i.e.*, the alternative basis for Defendants' remand request. *See* Principal Opp. at 72-76; Assiniboine, Standing Rock, and Shoshone-Bannock Opp. at 22-23. Specifically, Plaintiffs challenge whether there have been intervening events and new evidence and whether principles of administrative law allow for the application of voluntary remand. *Id.* As set forth in Defendants' opening brief, Interior seeks remand to consider the "lessons learned" from the current accounting work by OST, to consider

the criticisms of prior tribal accounting work, and to provide an administrative record for the

tribal accounting plan. *See* Defs.' Opening at 28-36. Plaintiffs' opposition is baseless and should

be rejected.

Contrary to Plaintiffs' position, a "voluntary remand" is a request by an agency for

"remand without [judicial] consideration of the merits," while "a court-generated remand" is "a

remand after consideration of the merits." *Central Power & Light Co. v. United States*, 634 F.2d

137, 145 (5th Cir. 1980).  According to the Supreme Court, power to remand a decision without

judicial consideration is vested in a court's equitable powers:

> The jurisdiction to review the orders of [the agency] is vested in a
> court with equity powers, and while the court must act within the
> bounds of the statute and without intruding upon the administrative
> province, it may adjust its relief to the exigencies of the case in
> accordance with the equitable principles governing judicial action.

*Ford Motor Co. v. Nat'l Labor Relations Bd.*, 305 U.S. 364, 373 (1939); *see also Loma Linda*

*Univ. v. Schweiker*, 705 F.2d 1123, 1127 (9th Cir. 1983) (reviewing court has inherent power to

remand a matter to an administrative agency).  Given the circumstances of these trust accounting

cases, Defendants have properly requested a voluntary request, and that request should be

granted.

C.    <u>The Court Should Not Prematurely Decide the Scope of Defendants' Duty to
Account or Inappropriately Restrict the Secretary of the Interior's Delegated
Decisionmaking Discretion Before Granting Defendants' Remand Motion.</u>

Plaintiffs press this Court to decide the following issues before ruling on Defendants'

remand motion: (1) what and whether there is a historical duty to account; (2) what the scope of

the historical accounting duty is, including:  (a) whether there is a duty to account for claims

before 1946, (b) which assets should be included in the accounting, (c) whether direct pay

- 16 -

transactions should be accounted for, (d) whether cadastral surveys should be conducted as a

starting point to ensure accuracy of ownership of ownership data, and (e) whether Defendants

must take immediate steps to obtain information from third parties to supplement missing records;

and (3) whether the TRP constitutes the accounting required by law.  *See* Principal Opp. at 51-52;

Osage and Gila River Opp. At 2, 6-7; Assiniboine, Standing Rock, and Shoshone-Bannock Opp.

at 2, 17-19.  Plaintiffs' invitation to decide these issues at this juncture, *i.e.,* in advance of the

completion of the remand, should be rejected.  Further, contrary to Plaintiffs' assertion about the

need to direct Interior's decisionmaking, this Court does not have jurisdiction, under the

separation-of-powers doctrine, to order "wholesale improvement of [a] program by court decree,

rather than in the offices of Department [of the Interior] or the halls of Congress, where

programmatic improvements are normally made."  *Lujan v. Nat'l Wildife Fed'n*, 497 U.S. 871,

882 (1990) (emphasis omitted); *see also Norton v. Southern Utah Wilderness Alliance*, 542 U.S.

at 66-67.

    The issues Plaintiffs demand to litigate now should be addressed, if ever, following

issuance of any final agency action under the tribal trust accounting plan, with a supporting

administrative record, upon which Plaintiffs can base any subsequent challenge and the Court can

rely to determine the merits of Plaintiffs' challenge.  To do otherwise, as Plaintiffs propose, *i.e.,*

to adjudicate the issues delineated by Plaintiffs now, would undermine the fundamental purpose

of primary jurisdiction, which is to allow for the agency to materially aid the Court by marshaling

the facts into a meaningful pattern for any subsequent adjudication.  *See Ricci,* 409 U.S. at 305-

06.  Furthermore, it would be premature, inefficient, and wasteful of judicial resources, as well as

those of the parties.[9]

Plaintiffs argue that this Court should reach these merits questions at this time to guide and restrict Interior's decisionmaking on remand and ensure that Interior does not decide that the TRP satisfies the agency's fiduciary obligations to furnish a "full and complete" accounting to tribes. *See* Principal Opp. at 52; Assiniboine, Standing Rock, and Shoshone-Bannock Opp. at 16-17. Plaintiffs' argument lacks merit.[10] It is an established legal principle that agencies are presumed to act in accordance with the law and that their actions enjoy a presumption of regularity from the courts. *See Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 415 (1971) (*rev'd on other grounds*) (agency decision is entitled to a presumption of regularity); *United States v. Chemical Found.*, 272 U.S. 1, 14-15 (1926) ("The presumption of regularity supports the official acts of public officers, and, in the absence of clear evidence to the contrary, courts presume that they have properly discharged their official duties.") (citations omitted). Accordingly, guided by this presumption of regularity, the Court should presume that Interior will act lawfully on remand even without any prior decision on the merits.[11]

More importantly, as the Supreme Court explained in *Vermont Yankee Nuclear Power*

---

[9]     Plaintiffs claim that Defendants have "implicitly concede[d]" liability in these cases by seeking remand. *See* Principal Opp. at 51. Defendants' remand motion in no way constitutes an admission of a duty to account or Defendants' breach of that duty. Voluntary remand can be sought and properly granted without any confession of error or liability. *See Shakeproof Assembly Components Div. of Illinois Tool Works, Inc. v. United States*, 412 F. Supp. 2d 1330, 1336-37 (Ct. Int'l Trade 2005).

[10]     Defendants note that it is within the range of possibilities as set forth in the Swimmer Declaration for Interior to conclude that the TRP does satisfy its obligations to some tribes.

[11]     The presumption of regularity also militates against Plaintiffs' argument that the Court should "closely monitor Interior's activities" during the preparation of any plan. *See* Assiniboine, Standing Rock, and Shoshone-Bannock Opp. at 22.

*Corp. v. Nat'l. Res. Def. Council*, 435 U.S. 519 (1978), the judiciary may not dictate to agencies

the methods and procedures of needed inquiries on remand, because "[s]uch a procedure clearly

runs the risk of 'propel[ling] the court into the domain which Congress has set aside exclusively

for the administrative agency.'" *Id.* at 545 (quoting *Sec. Exch. Comm'n  v. Chenery Corp.*, 332

U.S. 194, 196 (1947)).  Likewise, the Supreme Court has acknowledged the limited scope of

circumstances in which a court may order an executive agency to make a specific discretionary

determination.  *See Federal Power Comm'n v. Transcontinental Gas Pipe Line Corp.*, 423 U.S.

326, 333 (1976) (judicial review of agency action ordinarily requires remand to agency so that the

agency can exercise its discretion); *Cobell v. Kempthorne*, 455 F.3d 301, 308 (D.C. Cir. 2006),

*cert. denied*, 127 S. Ct. 1875 (2007) (courts must allow Interior to exercise its discretion and use

its expertise in complying with its statutory mandate under the 1994 Act); *Citizens for Balanced*

*Env't & Transp., Inc. v. Volpe*, 650 F.2d 455, 460 (2d. Cir. 1981) (court's role is limited; it may

not substitute its judgment for that of the agency); *Nat'l Tank Truck Carriers v. EPA*, 907 F.2d

177, 185 (D.C. Cir. 1990) ("We will not, indeed we cannot, dictate to the agency what course it

must ultimately take . . . . It may even be that the EPA will choose some other solution altogether.

In any event, that choice is the agency's and not ours.") (citations omitted).

    In devising a tribal historical accounting plan, Interior's discretionary determinations

include (but are not limited to): the scope of the accounting, the order of prioritization, and how

best to allocate its budget.  Swimmer Decl. at ¶ 22.  These determinations encompass a decision

about the merits of the TRP and the extent (if any) to which the TRP would discharge the

agency's trust accounting obligations to any tribes.  *Id.*  As the D.C. Circuit has consistently

ruled, it is for the agency to decide these types of matters in the first instance.  *See, e.g., Mashpee*

*Wampanoag Tribal Council, Inc. v. Norton*, 336 F.3d 1094, 1101 (D.C. Cir. 2003) ("[t]he agency

is in a unique—and authoritative—position to view its projects as a whole, estimate the prospects

for each, and allocate its resources in the optimal way.") (quoting *In re Barr Laboratories, Inc.*,

930 F.2d 72, 75 (1991)); *Cobell v. Kempthorne*, 240 F.3d 1081, 1104 (D.C. Cir. 2001) ("The

district court explicitly left open the choice of how the accounting [pursuant to the 1994 Act]

would be conducted, and whether certain accounting methods, such as statistical sampling or

something else, would be appropriate.  Such decisions are properly left in the hands of

administrative agencies.").  Plaintiffs even acknowledge that Interior has discretion as to how to

complete an accounting.  *See* Principal Opp. at 68.[12]  Thus, any decision on Interior's

discretionary determinations would be premature and need not be addressed in deciding the

remand motion.

     Plaintiffs also argue that remand should be denied because Defendants have not defined or

otherwise articulated the role of the Department of the Treasury ("Treasury") in a historical

accounting of tribal trust funds.  *See* Principal Brief at 70 n.27.  It is inappropriate at this juncture

for the Court to wade into an identification of the roles or duties of Treasury, because Congress

assigned to Interior selection of the scope of accounting methods (including the determination

whether, and to what extent, Treasury records would assist in preparing a historical accounting).

---

[12]     At the same time, Plaintiffs argue that a remand will be wasted, because Interior does not
know what certain key terms relevant to a historical accounting plan for tribes are.  *See* Osage
and Gila River Opp. at 5-6 (citing to Defendants' Answer to Osage Tribe Complaint regarding
the terms "accounting," "trust responsibilities," and "tribal assets"); Assiniboine, Standing Rock,
and Shoshone-Bannock Opp. at 17 (citing to Defendants' Answer to Standing Rock Sioux
Tribe's Complaint regarding the term "accounting").  Plaintiffs' argument misses the point.
Defendants' responses to these allegations speak to Plaintiffs' failure to define their terms within
their own pleadings.  In no way do Plaintiffs' arguments change the fact that Interior has
discretion to define these terms as part of its work concerning a historical tribal accounting plan.

*See* 25 U.S.C. §§ 4001 *et seq.* Such an identification of Treasury's roles or duties would be an improper advancement of a merits question.

Reaching the merits of the Defendants' duty to account or the scope of the accounting at this point risks wasting the parties' and Court's resources, because the issues probably will be changed and further refined following the completion of the remand. Therefore, Plaintiffs' proposal to do so should be rejected with dispatch. If Plaintiffs remain dissatisfied after remand, they may pursue judicial adjudication of any final agency actions set forth in the tribal historical accounting plan and any ensuing accounting work.[13] As Plaintiffs point out, the "deciding factor should be efficiency." *See* Ak-Chin Opp. at 4 n.1 (citing *Rhoades v. Avon Products*, No. 05-56047, 2007 WL 2983757 (9th Cir. Oct. 15, 2007). For the reasons set forth in this brief, proceeding now on these issues will not result in efficient judicial review.[14]

  D.    This Court Should Consider Mr. Swimmer's Declaration, As He Can Speak to the Agency's Institutional Knowledge and Any Attempts to Depose Him in These Cases is Improper.

Plaintiffs object to this Court's consideration of Mr. Swimmer's declaration and claim they are entitled to depose him. *See* Principal Opp. at 60-61. Plaintiffs' challenge to Mr. Swimmer's declaration rests on the fundamental misconception that Mr. Swimmer has to possess personal knowledge of all of the averments in his declaration. *Id.* ("A probing examination is

---

[13]    Depending on the type of issue raised in any subsequent judicial review proceeding, certain issues may be appropriately resolved prior to an accounting while others may be appropriately resolved only after an accounting is completed.

[14]    The same inefficiencies would result from ruling on Plaintiffs' request that the Court address class certification-related discovery and class certification at this time. *See* Nez Perce Opp. at 3 n.1. Any such requests are premature, given Defendants' pending motion for a remand.

particularly essential here because Mr. Swimmer appears to have no personal knowledge on

which to rely for most of his averments."). No such requirement exists.

Mr. Swimmer is the Special Trustee for American Indians, and, as such, he oversees the

Office of the Special Trustee for American Indians, including staff and contractors who discharge

their duties and responsibilities under his general direction and guidance. *See* Swimmer Decl. ¶

1. Mr. Swimmer is entitled, as a presidential appointee reporting directly to the Secretary of the

Interior (25 U.S.C. § 4042(a)(b)), to rely on the knowledge and information of his staff as well as

his own personal knowledge and information in making his declaration. Further, it is proper and

appropriate for the Court to consider Mr. Swimmer's declaration, even if it is not based on (or

entirely on) knowledge stemming from his own personal participation in events or decisions. *See*

*Washington Cent. R.R. Co. v. Nat'l Mediation Bd.*, 830 F. Supp. 1343, 1353 (E.D. Wash. 1993)

("Personal knowledge, however, is not strictly limited to activities in which the declarant has

personally participated") (citing *Londrigan v. Federal Bureau of Investigations*, 670 F.2d 1164,

1174-75 (D.C. Cir. 1981))). The relevant case law is instructive about the foundations of an

agency manager's declaration. For example, an agency manager's affidavit may be based on his

subsequent review of documents. *Laborers' Int'l Union v. United States Dep't of Justice*, 578 F.

Supp. 52, 56 (D.D.C. 1983); *Hutchinson v. Tenet*, 2003 U.S. Dist. LEXIS 26182 (D.D.C. 2003).

Likewise, an administrative agency manager may testify as to what his or her agents or employees

learned through their investigations and reported to that manager. *Navel Orange Admin.*

*Comm'n. v. Easter Orange Co.,* 722 F.2d 449, 453 (9th Cir. 1983).

Mr. Swimmer based his declaration on his actual knowledge, review of documents and

conversations with employees. *See* Swimmer Decl. ¶¶ 3-26. Plaintiffs have no legal basis to

depose Mr. Swimmer, because, contrary to Plaintiffs' contention, it is wholly appropriate for Mr. Swimmer to base his declaration on information that he acquired or was supplied as the head of an agency.  Moreover, Mr. Swimmer's declaration should be accorded the general presumption of good faith underlying agency affidavits.  *See SafeCard Services, Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991).[15]

Also, APA cases are generally decided on the basis of the agency's administrative record, *i.e.*, without the development of additional, extra-record evidence, through discovery or testimony.  "Challengers to agency action are not . . . ordinarily entitled to augment the agency's record with either discovery or testimony presented in the district court."  *Marshall County Health Care Auth. v. Shalala*, 988 F.2d 1221, 1226 (D.C. Cir. 1993) (citations omitted); *see Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 743-44 (1985).  Even in the exceptional instance in which additional fact-finding is appropriate, such fact-finding is limited to filling in the gaps in an existing record.  *See id.*  Plaintiffs are not entitled to conduct any discovery until, at a minimum, Interior has completed its accounting plan (or perhaps the underlying accounting itself) and produced an administrative record in support of the plan (and the accounting, if appropriate) and Plaintiffs have demonstrated that they are indeed entitled to such discovery.  In short, Mr. Swimmer's declaration should be considered by this Court in support of remand, and Plaintiffs' requests to depose Mr. Swimmer should be rejected.

### III.    IT IS PROPER TO STAY THE LITIGATION OF THESE CASES DURING THE REMAND PERIOD, WHILE INTERIOR COMPLETES ITS TRIBAL ACCOUNTING PLAN.

---

[15]    Defendants note that there is no evidence before the Court contradicting the Swimmer Declaration as to the ITMA, or any other factual matter addressed within that Declaration.  *Cf.* Colville and Coeur D'Alene Opp. at 4-6.

Contrary to Plaintiffs' position that formal discovery should proceed, it is proper for this Court to stay these cases while remand proceeds until completion. *See General American Tank Car Corp. v. El Dorado Terminal Co.*, 308 US 422, 432-33 (1940); *Am. Ass'n of Cruise Passengers*, 31 F.3d at 1187 (D.C. Cir. 1994) ("In general, when primary jurisdiction lies with an administrative agency, the district court should stay the proceedings . . . .") (citing *Reiter v. Cooper*, 113 S. Ct. 1213, 1220 (1993)). As pointed out in Plaintiffs' principal opposition, "the judicial process is suspended pending referral of such issues to an administrative body for its views." *See* Principal Opp. at 63 (citing *Western Pac.*, 352 U.S. at 64). Thus, upon granting the Defendants' remand motion, the Court should suspend the litigation of these cases until after Interior has completed the remand and the historical accounting plan for tribes. As stated in Defendants' opening brief, after completing the plan, Interior will provide the plan, as well as the supporting administrative record, to the Court and Plaintiffs for consideration. At that time, the parties will confer, if appropriate, and advise the Court about their proposals (if any) for any further proceedings based on the plan.

Plaintiffs argue that they will suffer prejudice as a result of a stay of litigation, because they will not have access to trust records during the six-month remand. *See* Principal Opp. at 57-59; Ak-Chin Opp. at 4. This argument is fatally flawed. Interior provides beneficiaries with access to their trust records as part of its regular course of business. For example, Plaintiffs receive periodic statements of performance, as mandated by the 1994 Act. *See* 25 C.F.R. § 115.803. They also have access to non-monetary trust records. *See, e.g.*, 25 C.F.R. § 150.11. In addition, contrary to Plaintiffs' claims that they have no ready remedy for denial or delay of records during the remand period, there is an available, established administrative appeal

procedure set forth in 25 C.F.R. Part 2.8.[16]  Moreover, Defendants have been and continue to be preparing and providing records as part of informal discovery exchanges during the existing stays of these cases.  *See, e.g.,* Declaration of Delia Carlyle ¶¶ 11-12.

Additionally, certain Plaintiffs claim that they would not have access to their trust records but for their lawsuits.  *See* Ak-Chin Opp. at 6, 8; Assiniboine, Standing Rock, and Shoshone-Bannock Opp. at 25.  This is simply not the case.  For instance, ordinary course of business processing and approval of surface use applications regarding its non-monetary assets occurs with regularity between the BIA and the Ak-Chin Indian Community.  *See generally* Declaration of Cecilia Martinez In Support of Defendants' Mot. for Voluntary Remand (attaching correspondence from 2005 (*i.e.*, before Plaintiff filed its lawsuit) regarding rights-of-way across the Ak-Chin reservation, and correspondence from 2007, after the filing of the lawsuit).  Importantly, the situation and issues specific to Ak-Chin, *i.e.*, the management of non-monetary assets and the direct payment of lease revenues to the tribe, reinforces Defendants' position that remand should be granted, as Interior is in the best position to determine how these tribe-specific and other factors should be considered as part of carrying out its statutory mandate under the 1994 Act.  *See* Swimmer Decl. ¶ 22 (factors such as the inclusion of non-monetary assets will be considered in the tribal accounting plan).

## IV.    CONCLUSION

For all the reasons set forth here and in the opening brief, Defendants respectfully request

---

[16]       Of note, this regulatory appeals process can hardly be said to be new.  In fact, this appeals process has existed since at least 1960.  *See* 25 Fed. Reg. 9106 (Dec. 22, 1960).  Prior to 1960, Sec. 1 of Executive Order 2508 provided for appeals to the Secretary of the Interior based on any action taken by the Commissioner of Indian Affairs.  *See* Exec. Order No. 2508 (Jan. 11, 1949).

that this Court grant Defendants' Motion for Remand to the Department of the Interior.


Respectfully submitted this 21st day of November, 2007,

RONALD J. TENPAS
Acting Assistant Attorney General

/s/ *Kevin J. Larsen*
KEVIN J. LARSEN
MAUREEN E. RUDOLPH
JOHN H. MARTIN
KEVIN REGAN
MATTHEW M. MARINELLI
ANTHONY P. HOANG
United States Department of Justice
Environment & Natural Resources Division
Natural Resources Section
P.O. Box 663
Washington, D.C.  20044-0663
Tel: (202) 305-0258
Tel: (202) 305-0479
Tel: (303) 844-1383
Tel: (202) 305-3022
Tel: (202) 305-0293
Tel: (202) 305-0241
Fax: (202) 353-2021

OF COUNSEL:

LAWRENCE JENSEN
PAUL SMYTH
THOMAS BARTMAN
ELISABETH BRANDON
GLADYS COJOCARI
SHANI WALKER
Office of the Solicitor
United States Department of the Interior
Washington, D.C.  20240

TERESA E. DAWSON

- 26 -

Office of the Chief Counsel
Financial Management Service
United States Department of the Treasury
Washington, D.C.  20227

**CERTIFICATE OF SERVICE**

I hereby certify that, on November 21, 2007, I electronically transmitted the foregoing DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN REPLY TO PLAINTIFFS' MEMORANDA IN OPPOSITION TO DEFENDANTS' MOTION FOR REMAND AND TEMPORARY STAY OF LITIGATION to the Clerk of the Court, using the ECF system for filing, and caused the ECF system to transmit a Notice of Electronic Filing to the counsel of record listed on the ECF system for this case.

*/s/ Kevin J. Larsen*
KEVIN J. LARSEN