IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| AK CHIN INDIAN COMMUNITY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:06CV02245 (JR) |
| | ) | |
| DIRK KEMPTHORNE,  et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## DECLARATION OF CECILIA MARTINEZ
## IN SUPPORT OF DEFENDANTS' MOTION FOR VOLUNTARY REMAND

Pursuant to 28 U.S.C. section 1746, I, Cecilia Martinez, declare as follows:

1. I am the Superintendent of the Bureau of Indian Affairs (BIA) Pima Agency, which is located in Sacaton, Arizona. I have held this position since April 2006, and I have been employed by the Department of the Interior, Bureau of Indian Affairs (BIA) since June 1986.

2. Attached as Exhibit A are true and correct copies of some of the 2005-2007 correspondence between the BIA Pima Agency and the Ak-Chin Indian Community.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information and belief, and that this declaration was executed on November 20, 2007.

_____
CECILIA MARTINEZ



# United States Department of the Interior
BUREAU OF INDIAN AFFAIRS
PIMA INDIAN AGENCY
P.O. BOX 8
SACATON, ARIZONA 85247

IN REPLY:
Branch of Real Estate Services
Telephone: 520-562-3376/3377
FAX Number: 520-562-1260

MAR 0 8 2007

Ms. Delia M. Carlyle, Chairman
Ak-Chin Indian Community
42507 W. Peters & Nall Road
Maricopa, Arizona 85239

Dear Ms. Carlyle:

This is in response to your letter dated February 22, 2007, requesting technical assistance from our office.

Our office has requested an appraisal for the property which was leased by Renal West Care Group, in Lot 68, Section 33, Township 4 South, Range 3 East of the Gila and Salt River Base and Meridian, Pinal County, Arizona, containing 1.0 acres more or less, dated March 1, 2007. We have enclosed a copy of the appraisal request, and a copy of the uncertified title status report, for your information.

In response to your question regarding agreements in duration of seven (7) years or more, 25 U.S.C. § 81 (b) requires that *"No agreement or contract with an Indian tribe that encumbers Indian lands for a period of seven (7) or more years shall be valid unless that agreement or contract bears the approval of the Secretary of the Interior or a designee of the Secretary."*

If you have any questions or wish to discuss this matter further, please contact either the Superintendent's office at (520) 562-3326 or Larry McKeighen, Acting Realty Officer at (520) 562-3376.

Sincerely,

/s/ JAY DANIELS

ACTING Superintendent

Enclosures

Realty Chrono
Superintendent Chrono
Case Chrono

hhunt/hh: 03/07/2007



# United States Department of the Interior
BUREAU OF INDIAN AFFAIRS
PIMA AGENCY
P.O. BOX 8
SACATON, ARIZONA 85247

IN REPLY
Branch of Real Estate Services
Telephone: 520/562-3375/3377
FAX Number: 520/562-1280

FEB 0 8 2007

Strickland & Strickland
Attn: Mr. Robert F. Palmquist
4400 East Broadway, Suite 700
Tucson, Arizona 85711-3517

Dear Mr. Palmquist:

In response to your letter dated January 25, 2007, regarding an application for a right-of-way (ROW) between the Ak-Chin Indian Community and ED3, we hope to clarify the process for obtaining a completed ROW by identifying what is required.

1. Provide written consent of landowner (ROW Form 97-7). A tribal Resolution can suffice for tribal lands.

2. Plat Map(s) of definite location (2 original mylars and 2 copies. See 25 CFR § 169.6, 169.7, 169.8, 169.9, 169.10 and 169.11). Copies can suffice in this instance.

3. Deposit of estimated damages or compensation (See 25 CFR § 169.4 and 169.14)

4. Evidence of Authority of Officers to Execute Papers (ROW Form 94-4)

5. For corporation or business, requirements of 25 CFR § 169.4 and 169.5 (unless previously filed):

   a. State certified copy of corporate charter or articles of incorporation

   b. Certified copy of corporate resolution, by-laws, articles of partnership or association authorizing signatory to file the application.

We regret the confusion concerning the need for the Ak-Chin Chairperson's signature on the application. There is no need for an actual signature. On allotted land(s), a signature of consent is required by the landowner(s). Tribal consent for ROW is provided by an approved tribal resolution.

The ED3 ROW application was approved and picked up by Mr. Jim Harregen on February 1, 2007. Since this is a one time payment, we advised ED3 to make the payment directly to the Ak-Chin Indian Community with instructions to send BIA, Realty a copy of their check stub and a copy of a signed billing notice that ED3 will receive in the mail that will say $0.00 due (because it was by direct payment) to establish that Ak-Chin was paid.

If you have any questions, or wish to discuss this matter further, please contact the Superintendent's office at (520) 562-3326.

Sincerely,

/s/ JAY DANIELS

ACTING Superintendent

Cc: ED3 of Pinal County, 41630 W. Louis Johnson, Drive, Maricopa, AZ 85239

Admin Chrono
Realty Chrono
File Copy-AKRW0107PT

02.02.07



# United States Department of the Interior

BUREAU OF INDIAN AFFAIRS
PIMA AGENCY
P.O. BOX 8
SACATON, ARIZONA 85247

IN REPLY:
Branch of Real Estate Services
Telephone: 520/562-3376/3377
FAX Number: 520/562-1280

FEB 0 1 2007

Honorable Delia M. Carlyle
Chairperson-Ak-Chin Indian Community
42507 W. Peters & Nall Road
Maricopa, Arizona 85239

Dear Madam Chairperson Carlyle:

Enclosed is the approved Grant of Easement for Right of Way, file number AKRW0107PT
between Ak-Chin Indian Community and Electrical District 3 of Pinal County (Grantee).

Upon receiving the approved Grant of Easement, the Grantee will be submitting a direct
payment of $96,872.55, paid to the Ak-Chin Indian Community. The Grantee has been
advised to provide documents to the Bureau of Indian Affairs, that payment has been made.

Should you have any questions, please contact Ms. Cecilia Martinez, Superintendent, at
(520) 562-3326 or Mr. Larry McKeighen, Acting Realty Officer, at telephone number (520)
562-3376.

Sincerely,

/S/ JAY DANIELS

ACTING Superintendent

Enclosure

Cc: Electrical District 3 of Pinal County, 41630 W. Louis Johnson Dr., Maricopa, AZ 85239



# United States Department of the Interior
BUREAU OF INDIAN AFFAIRS
PIMA AGENCY
P.O. BOX 8
SACATON, ARIZONA 85247

IN REPLY:
Branch of Real Estate Services    FEB 0 1 2007
Telephone: 520/562-3376/3377
FAX Number: 520/562-1280

Mr. Jim Hartdegen
Electrical District 3 of Pinal County
41630 W. Louis Johnson Drive
Maricopa, Arizona 85239

Dear Mr. Hartdegen:

Enclosed is the approved Grant of Easement for Right of Way, file number AKRW0107PT, between Electrical District 3 of Pinal County, and the Ak-Chin Indian Community.

You will be receiving an invoice noting your payment is $0.00, please sign the invoice and return as indicated on the invoice. Although your payment is to be paid direct to the Ak-Chin Indian Community for the amount of $96,872.55, please furnish our office documents that this payment has been paid for our file.

Should you have any questions, please contact Ms. Cecilia Martinez, Superintendent at (520) 562-3326 or Mr. Larry McKeighen, Acting Realty Officer, at telephone number (520) 562-3376.

Sincerely,

/S/ JAY DANIELS

ACTING Superintendent

Enclosure

Cc: Ak-Chin Indian Community, 42507 W. Peters & Nall Rd., Maricopa, AZ 85239



# United States Department of the Interior
## BUREAU OF INDIAN AFFAIRS
### PIMA AGENCY
Post Office Box 8 – Sacaton, Arizona 85247

IN REPLY REFER TO:

Real Estate Services
TEL.: (520) 562-3376/3377
FAX: (520) 562-1280

MAY 1 6 2005

Honorable Terry O. Enos
Chairman, Ak-Chin Indian Community
42507 W. Peters & Nall Road
Maricopa, Arizona 85239

Dear Chairman Enos:

This is in response to your request of May 5, 2005 for a Right-Of-Way Application concerning Westpac Development, Inc. developing a subdivision (Santa Cruz Ranch) on the southeast corner of the Ak-Chin Indian Reservation. The proposed project involves the realignment of approximately 3.23 miles of the Santa Cruz Wash in Sections 15, 22 and 26, Township 5 South, Range 4 East, Pinal County, Arizona, and that the realignment is needed to rectify potential flooding issues in the proposed Santa Cruz Ranch subdivision.

Enclosed is a copy of the Right-Of-Way Procedures with Right-Of-Way Application.

If there are any questions, please contact the undersigned at (520) 562-3326 or Julia A. Molina, Real Estate Services, at (520) 562-3376, or Peter Overton, Environmental Office, at (520) 562-.3326.

Sincerely,

Acting Superintendent

Enclosure

cc: With copy of May 5, 2005 Letter, Resolution A-37-05 & January 12, 2004 M.O.U. to:
Stan Webb, Realty Officer, Branch of Real Estate Services, Western Region ✓
Cathy Wilson, Land & Water Resources Officer, Branch of Land & Water Resources, Western Region
Amy L. Heuslein, Environmental Protection Officer, Branch of Environmental Mgmt., Western Region
Peter Overton, Environmental Specialist, Pima Agency
Joe Revak, Supervisory Engineer, Branch of Natural Resources, Pima Agency
Department of Army, Corps of Engineer, AZ & NV Area Office, Attn: Cindy Lester, Chief of AZ
Section, Regulatory Branch, 3636 North Central Avenue, Suite 900, Phoenix, AZ 85012-1939

# AK-CHIN INDIAN COMMUNITY
## Community Government

42507 W. Peters & Nall Road · Maricopa, Arizona 85239 · Telephone: (520) 568-1000 · Fax: (520) 568-4566

May 5, 2005

Benjamin H. Nuvamsa, Superintendent
Pima Agency
P.O Box 8
Sacaton, Arizona 85247

Dear Superintendent,

The Ak-Chin Indian Community and Westpac Development Inc., are requesting a Right-of Way Application. Westpac Development inc. is developing a subdivision (Santa Cruz Ranch) on the southeast corner of the reservation. The proposed project involves the realignment of approximately 3.23 miles of the Santa Cruz Wash in Section 15, 22, and 26, Township 05 South, and Range 04 East in Pinal County, Arizona. The realignment project is needed to rectify potential flooding issues in the proposed Santa Cruz Ranch subdivision.

Approximately 75 percent of the proposed 1,922-acre Santa Cruz Ranch development is in the 100-year floodplain of the Santa Cruz Wash. The Santa Cruz Wash currently does not have capacity to contain the 100-year flood event of approximately 12,600cfs. Westpac Development is proposing to contain the 100-year flood by canalizing over flow onto the AK-Chin Indian Community. The canalization shall lessen the impact in an event of the 100-year flood to the Santa Cruz Ranch and eliminate the 100-year floodplain from the Ak-Chin Indian Community. The Ak-Chin Indian Community has signed a Memorandum of Understanding Agreement (attachment A) with Westpac to start the process of applying for a 404 permit and BIA Right-of Way application.

Please submit a Right of Way Application to the following address 42507 W. Peters & Nall Road, Maricopa, Arizona 85239 attention Planning and Development Office. The Community looks forward to your response.

Sincerely,

Terry O. Enos, Chairman
Ak-Chin Indian Community Council

# AK-CHIN INDIAN COMMUNITY COUNCIL



42507 W. Peters & Nall Road
Maricopa, Arizona 85239
Telephone: (520) 568-1000

Resolution No. **A-37-05**

## RESOLUTION OF THE
## AK-CHIN INDIAN COMMUNITY COUNCIL

### A Resolution Requesting a BIA Right-of-Way Application Regarding Santa Cruz Wash, Ak-Chin Indian Reservation

**WHEREAS,** the Ak-Chin Indian Community (the "Community") is a federally recognized Indian Tribe organized pursuant to the Indian Reorganization Act of 1934; and

**WHEREAS,** the Community is governed by the Ak-Chin Community Council (the "Council") pursuant to its Articles of Association (the "Articles") approved by the Secretary of the Interior December 20, 1961; and

**WHEREAS,** the Community and Westpac Development Corporation, Inc., ("Westpac"), as agent for Anderson and Val Vista 6, LLC and Santa Cruz Ranch, LLC (collectively, "Owners") have negotiated a Memorandum of Understanding respecting Owners' development of the proposed 1,922 acre Santa Cruz Ranch Project located between Murphy and Russell Roads and Val Vista and Miller Roads, a copy of which is attached hereto and made a part hereof as Exhibit "A"; and

**WHEREAS,** the Community has undertaken to cooperate with Westpac in requesting the Bureau of Indian Affairs ("BIA") and the Department of Interior to provide permanent maintenance easements to the Santa Cruz Project, allowing oversight of maintenance of a completed channel and the existing channel to carry out maintenance duties and functions; and

**WHEREAS,** the parties have determined that part of this process involves a request by the Community for a BIA Right of Way Application to and for the Santa Cruz Wash.

**NOW THEREFORE BE IT RESOLVED,** the Council does hereby authorize Ak-Chin Indian Community to enter into a request along with Westpac and related Owners, to the Bureau of Indian Affairs for a Right of Way Application to and for the Santa Cruz Wash; and

**NOW THEREFORE BE IT FURTHER RESOLVED,** that the Chair or Vice-Chair of the Community are hereby authorized to execute any documents necessary to complete the request for BIA Right of Way Application.

## C-E-R-T-I-F-I-C-A-T-I-O-N

Pursuant to authority in Article VIII, Section 1(a), (b), (c), (d), and (m) of the Articles of Association of the Ak-Chin Indian Community, approved by the Secretary of the Interior on December 20, 1961, by a quorum of 4 members present at a Regular Council meeting held on May 4, 2005, at the Ak-Chin Reservation, Maricopa, Arizona, by a vote of 4 for, 0 against, 0 not voting, and 1 absent, the foregoing Resolution was adopted.

Terry O. Enos, Chairman
Ak-Chin Indian Community Council

ATTEST:

_____ Maldonado, Secretary
_____ Community Council

2

## MEMORANDUM OF UNDERSTANDING

This Memorandum of Understanding ("**MOU**") is entered into this _12_ day of January, 2004, by and between Westpac Development Corporation, Inc. ("**Westpac**") as agent for Anderson & Val Vista 6 LLC and Santa Cruz Ranch LLC (collectively, "**Owners**"), the owners of the proposed 1922 acre Santa Cruz Ranch Project located between approximately Murphy and Russell Roads and Val Vista and Miller Roads, and the Ak-Chin Indian Community ("**Ak-Chin**"). The parties to this MOU acknowledge that its provisions pertaining to the subject matter hereof, except for Section 8 below, are not intended to be legally binding on either party and are merely a recital of the terms on which they have reached a mutual understanding and shall proceed in good faith to document and execute a formal definitive and binding Agreement between the Owners and the Ak-Chin within a timely manner. Section 8 below shall be legally binding when this MOU is signed by Ak-Chin. It is in good faith that Owner and Ak-Chin agree with the following recitals:

1. Owners would be required to cause the engineering firm of Coe & Van Loo Consultants, Inc. ("**CVL**") to cause the plans to be sealed by a registered Civil Engineer licensed by the State of Arizona and regulated by the State Board of Technical Registration. CVL's insurer shall name Ak-Chin as an additional insured under it General Liability Insurance Policy. CVL will maintain in force a two million dollar ($2,000,000) Professional Liability policy commonly referred to as "errors and omissions" insurance.

2. Owners will negotiate a maintenance agreement with an appropriately created and recognized Flood Control District, Special Purpose Association, County Special Taxing District, or other entity able to pay for and maintain flood control facilities of the new and existing channel on Ak-Chin land south of the Union Pacific Railroad tracks in the specific area to be identified on the final engineering plans.

   Ak-Chin will fully cooperate therewith and request the Secretary to provide a permanent maintenance easements to such entity, allowing the party selected to oversee the maintenance of a completed channel and the existing channel to have all necessary and reasonable access to the channel to carry out its maintenance duties and functions.

   Owner shall also negotiate an agreement with any existing entities which have assumed responsibility for the maintenance of any portion of Ak-Chin's flood control facilities.

3. Ak-Chin would not be obligated to pay for any costs of obtaining approved plans for this floodway channel project, including, but not limited to, the engineering, surveying, filing fees, and costs of obtaining Department of Interior (DOI) and/or Bureau of Indian Affairs (BIA) approval.

1

4. Ak-Chin will not be required to pay for any portion of the construction of this floodway channel project or for such modifications to the existing floodway channel as may be required by this floodway channel project.

5. In order to assure Ak-Chin that they will not be left with a partially constructed channel, Owners will agree to cause an irrevocable letter of credit to be issued in the amount of the cost to construct that portion of the floodway channel project on the Ak-Chin property and necessary to protect Ak-Chin from any flooding or any liability for flooding of adjacent properties which occupies land within the boundaries of the Ak-Chin community prior to commencement of construction (the "Irrevocable Letter of Credit"). Should the Owners decide not to renew the Irrevocable Letter of Credit thirty-days before its expiration date, the Irrevocable Letter of Credit can be reduced to cash by Ak-Chin. This Irrevocable Letter of Credit would be required to be issued at the time that construction permits are issued to start construction on the portion of the floodway channel project located on Ak-Chin land and the final agreement between the Parties would indicate under what specific circumstances Ak-Chin would have access to funds to be used to complete construction if same is not completed by Owners or any successor to any portion of the Santa Cruz project. Owners will also comply with all bonding, surety or other guarantees required by State of Arizona for obtaining and maintaining permit across the State lands involved in the project, and will furnish Ak-Chin with copies indicating their compliance with such requirements.

6. Owners would agree to take reasonable measures to mitigate adverse impacts on any adjacent land belonging to Ak-Chin Indian Community during the construction of the channel, including, without limitation, possible adverse impacts arising out of the construction process itself, for example, by trucks traveling over adjacent farm land. As an exhibit to the final agreement between the parties, and prior to construction of the channel, the Parties would be obligated to photograph, and/or videotape the condition of all potentially affected land areas to assist in later determining if any damage was caused to such land and improvements as a direct result of the construction activity.

7. Owners would agree to pay all costs of replanting any crops that are being cultivated at the time of this floodway channel construction and that may be displaced because of the channelization project in the areas of Ak-Chin land as would be shown in a map exhibit to be attached to the final agreement. Any such payments shall be made based upon the fair market value of the crops at the time of construction and would only be paid for crops that are actively being farmed at the commencement of construction. Further, the Owners agree to pay the actual costs of reconstituting any land that may be displaced because of the channelization project to another area of the Ak-Chin owned land as indicated specifically in a map exhibit attached to the final agreement between the parties.

2

8. Owners agree to reimburse Ak-Chin for the full costs of the legal fees Ak-Chin incurs from the inception of the discussions on April 30, 2004, until the signing of this Memorandum of Understanding. Such fees shall be reasonable and shall be repaid to Ak-Chin within 60 days of the signing of this MOU. No reimbursement shall be required if the Tribal Council does not approve of this MOU.

Owners shall then reimburse Ak-Chin for the full costs of any reasonable legal fees incurred by Ak-Chin from the signing of this MOU until such time as the final agreement and approvals are granted for this project by the Department of Interior (DOI) every 30 days as requested. A rough estimate of ongoing legal fees shall be attached as an exhibit to the final agreement.

9. Owners and Ak-Chin would allow the Army Corps of Engineers to have an informal review of the project and the Army Corps of Engineers and the Bureau of Indian Affairs to undertake any legally applicable review as well.

10. Owners would agree that any homeowner who purchases in Santa Cruz Ranch shall be, at the time of purchasing a home, furnished with a disclosure explaining the presence and possible risk of over flight insecticide spraying in the general vicinity and shall be required to acknowledge this disclosed activity in writing. Such writing shall include a statement by which the homeowner acknowledges the spraying to be an activity pre-existing the homeowner's occupancy of the homeowner's property, and that the homeowner assumes the risk of any harm resulting from such activity so long as Ak-Chin remains in compliance with any State, Federal or Tribal law pertaining to the activity.

11. Ak-Chin shall grant Owners, and its representative agents, employees and contractors all reasonable access to the property within its boundaries commencing on the date this MOU is signed and continuing until completion of the floodway channel project, as well as any necessary temporary easements for construction of the channels. Owners shall give Ak-Chin 5 day's written notice prior to first entering upon the lands within the Ak-Chin boundaries, and shall otherwise comply in all respects with the requirements of Ak-Chin's Right-of-Entry permit system. Ak-Chin expressly acknowledges that a number of different persons and entities will need to have reasonable uninhibited access within the Ak-Chin boundaries to complete this project, including without limitation Owners, Westpac, their respective engineers, contractors, surveyors, and various government bodies, and Ak-Chin will allow such entities to travel upon and over its land in the course of completing the project.

<u>3</u>

12. The final definitive agreement incorporating these terms must be formalized by a Resolution of the Tribal Council and executed by the official tribal council representative. Ak-Chin agrees to fully cooperate in processing the application through the DOI and the BIA in a timely, professional manner, and a conceptual time line prepared by the owner and Ak-Chin shall be attached as an exhibit to this MOU shortly after its execution.

The definitive agreement would be made contingent upon the following occurrences:

- The State Land Department granting approval of the necessary easements for the construction and maintenance of a portion of the floodway channel project to be built across State Land;
- Westpac, on behalf of Owners, receiving zoning approval acceptable to Owners for the Santa Cruz Ranch project from all appropriate governing bodies;
- The floodway channel design and proposed maintenance arrangement must be approved by FEMA and the Corp of Engineers; and
- Owners agree that any reasonable legal fees called for under Paragraph 8 of this Agreement shall be paid so long as the MOU is approved by Tribal Council.

The parties hereto acknowledge that they have read the above provisions, understand and agree with the terms set forth above.

Westpac Development Corporation, Inc.

By:

Its: Executive Vice President

The Ak-Chin Indian Community

By:

Its: CHAIRMAN

4

Department of The Army
Corps of Engineer
Arizona and Nevada Area Office
**Attn: Cindy Lester, Chief of Arizona Section,
Regulatory Branch**

3636 North Central Avenue
Suite 900
Phoenix, Arizona 85012-1939



United States Department of the Interior

BUREAU OF INDIAN AFFAIRS

PIMA AGENCY

Post Office Box 8 – Sacaton, Arizona 85247

IN REPLY REFER TO:
Real Estate Services
(520) 562-3376/3377

## RIGHT-OF-WAY PROCEDURES

A formal application for a right-of-way shall be filed with the Superintendent, Pima Agency, Attention: Real Estate Services. The application shall cite the statute under which it was filed, show the width, length and area for each type of land status, and accompanied by:

a.  Written agreement to comply with all stipulations of 25 CFR 169.

b.  Maps of definite location (two permanent reproducibles and four prints), with complete legal centerline description. Maps should show breakdown of length and area of each type of Indian land crossed: i.e., Tribal, allotted lands.

   There should be subscribed on the maps of definite location an affidavit executed by the engineer who made the survey, and a certificate executed by the applicant, both certifying to the accuracy of the survey and maps and both designating by termini and length of the line of route.

c.  Appraisal report and deposit of right-of-way consideration, if not previously deposited. No waiver of payment required per 25 CFR 169.12-14 will be considered unless specifically requested in writing.

d.  Allottees' written consent on Form 5-105b in the case of allotted land. Tribal resolution if tribal land.

   The applicant shall be responsible for obtaining the landowners' consents (signatures) prior to submission to Real Estate Services.

e.  Archaeological clearance.

(1)

f. Environmental Assessment Report--a brief statement of the project (include pertinent data of facilities such as power line voltage, phase, type of poles; size and type of pipe lines whether buried or surface, etc.), location of project, terrain of land, type of vegetation, number of people to be served, any expected adverse effect on aesthetic value, wildlife, surface or subsurface water sources, any crossing of existing or other rights-of-way, and plans for restoration and/or reseeding of any disturbed surface (erosion control).

Copies of the applicable sections of 25 Code of Federal Regulations, Part 169, are included for your information.

If you have any questions, please call Real Estate Services at (520) 562-3376/3377.



III.    Right-of-Way Application

A.    Functions at Agency Level:

1.    Formal application shall be filed with the Superintendent, Pima Agency,
Attention: Real Estate Services. The application shall cite the statute under
which it was filed, show the width, length and area for each type of land
status, and accompanied by:

a. Written agreement to comply with all stipulations of 25 CFR 169.

b. Maps of definite location (two permanent reproducibles and four prints),
with complete legal centerline description. Maps should show breakdown
of length and area of each type of Indian land crossed, i.e., tribal, allotted
lands.

There should be subscribed on the maps of definite location, an affidavit
executed by the engineer who made the survey, and a certificate executed by
the applicant, both certifying to the accuracy of the survey and maps and
both designating by termini and length of the line of route.

c. Appraisal report and deposit of right-of-way consideration, if not
previously deposited. No waiver of payment required per 25 CFR 169.12-
14 will be considered unless specifically requested in writing.

d. Allottee's written consent on Form F-104b in the case of allotted
land.

e. Archeological clearance

f. Environmental Assessment Report—a brief statement of the project
(include pertinent data of facilities such as power line voltage, phase, type of
poles; size and type of pipelines whether buried or surface, etc.), location of
project, terrain of land, type of vegetation, number of people to be served,
any expected adverse effect on aesthetic value, wildlife, source or
subsurface water sources, any crossing of existing or other rights-of-way,
and plans for restoration and/or reseeding of any disturbed source (erosion
control).

Formal environmental impact statement will be required on major projects.



IV.    Grant of Easement for Right-of-Way

    A.    Functions at the Agency level:

        1. Upon satisfactory compliance with all requirements, Real Estate Services will forward the right-of-way packet to the Superintendent for his review and approval.

        2. After approval, distribution of the Grant of Easement for Right-of-Way is made to the applicant.

        3. Distribution of the right-of-way consideration to the landowners involved will be made depending on the schedule of distribution of the lease distribution clerk.

        4. The Agency will forward the approved right-of-way documents to Land Titles and Records Office, Albuquerque, New Mexico for recording.

V.    Actions to complete Right-of-Way  (25 CFR 169.16)

    A.    Upon completion of construction of right-of-way, applicant shall furnish Real Estate Services with Affidavit of Completion, in duplicate

    B.    Agency Real Estate Service will field inspect the site, and report any additional damages or failure of grantee to comply with easement stipulations. The Superintendent's recommendation for final clearance or further remedial action will be made.

    C.    Upon receipt of the written report of field inspection, distribution of the balance of the deposit will be made based on the report, and a letter written to applicant.

    B.    The affidavit of completion is forwarded to Land Titles and Records for recording.



The role of the Bureau of Indian Affairs is to review the completed rights-of-way documents, service line agreements and leases for conformance with existing laws and regulations.

Almost all land, both Indian and non-Indian, is served by roads, canals, transmission lines, as well as other services. Most of those services are services needed and used by Indian tribes and individual Indians. Many statutes have given the Secretary and others, duties and powers to grant rights-of-way through Indian lands. Specifically, the Act of February 5, 1948, is the statute we look to now to grant and process rights of way on Indian land. The 1948 Act authorizes the granting of rights of way for ALL purposes across both tribal and individual owned Indian land. The Secretary in granting rights of way has to have the consent of the tribe and/or the individual owners (under some circumstances it is not necessary to have 100% of individual owners). He is also authorized to determine the amount of just compensation. The regulations require that the consent of the tribes formed under the Indian Reorganization Act (May 1, 1936), and the Oklahoma Indian Welfare Act and all other tribes, which have tribal governing bodies, recognized by the Secretary. The only instance the Secretary can grant a right of way without the consent of a tribe across tribally owned land is if the tribe does not have a recognized governing body.

A "right-of-way" is primarily a privilege to pass over another's land, or a privilege which one person, or a particular description of persons, may have of passing over the land of another. It is nothing more than a special and limited right of use, which does not exist as a natural right, but which must be created by a grant or its equivalent.

The Bureau's responsibility in making grants of rights-of-way over Indian land stems from the United States Government's responsibilities as trustee for the land. Therefore, grants of rights-of-way shall be made in such a manner as to discharge properly the responsibilities and obligations of a trustee to the owner or owners of the land; that is, to assure that the rights of the owner or owners of the land are protected.

The regulations (25 CFR 169) are designed to give adequate latitude to act in the best interest of the owners in a wide variety of circumstances and situations, which arise at the Agency in connection with rights-of-way matters.

The Secretary may not grant a right-of-way or renewal for less than the appraisal fair market value, plus any severance damages, unless waived in writing by the landowners or their representatives. It should be noted that the consideration is stated is not les than the appraisal value, but this is not intended to limit or restrict the individual's or tribes in negotiating amounts in excess of the appraisal value. Likewise, the term "waived" as used extends to a waiver of all or part. The regulations give the authority, with the landowners consent, to waive all compensation, therefore, it is also implied that less than the total compensation may be waived, if such partial compensation and other considerations have been negotiated and together compensate the landowner for the taking. If all or part of the consideration is waived, reasons for doing so should be clearly stated.



## Utilities

It is the responsibility of the prospective consumer (applicant) to request for power, telephone line, sewer, water or other services to their designated homesite.

The entity providing the services must then provide Real Estate Services with 1) Adequate description of the proposed project and sketch showing the general location of the route 2) Written consent of allotted landowners 3) Application for Right-of-Way 4) Environmental Assessment Report to determine whether or not an Environmental Impact Statement is required, and 5) An archaeological clearance might be necessary if the home site is located on historic properties.

A service line agreement is used for furnishing utility services across lands of the owner, authorized occupant or user for facilities within these lands. It does not include or extend to lands, which are not owned, or not under the authorized occupancy or use. The servicing entity furnishes Real Estate Services, Pima Agency, with an executed copy of the agreement with a plat or diagram showing the location, size, and extent of the line. These are filed with the Superintendent, Pima Agency, and do not need to be recorded with Land Titles and Records.

## Ingress or Egress

The applicant is responsible for making sure the property has ingress and egress rights. The Bureau of Indian Affairs Branch of Roads will construct and maintain a road only if it on their road system or if the Gila River Indian Community requests that a road be placed on the BIA road system. The new criteria are that a road has to serve at least three (3) residences.

The Bureau of Indian Affairs must, as a legally responsible trustee protect the rights of owners of trust land. Formal right-of-way grants are therefore required in order to property occupy or use a right of way.

ILLUSTRATION # 1

APPLICATION FOR PERMISSION TO SURVEY FOR RIGHT-OF-WAY

_____

_____

_____

having a residence or principal place of business at _____

_____ hereby files an application with the Bureau of Indian

Affairs, pursuant to the terms and provisions of the Act of February 5, 1948

(62 Stat. 17; 25 U.S.C. 323), and to the regulations of the Department of

the Interior contained in Title 25, Code of Federal Regulations, Part 169,

for permission to survey a right-of-way for the following purposes and

reasons:

Across the following described Indian land:

The applicant understands and hereby expressly agrees to indemnify the

United States, the owners of the land, and occupants of the land, against

liability for loss of lie, personal injury and property damage occurring

because of survey activities and caused by the applicant, his employees,

contractors and their employees, or subcontractors and their employees.

7

8

ILLUSTRATION #1

Pg. 2

IN WITNESS WHERE OF, _____ has caused

this instrument to be executed this _____ day of _____ 19 ___ .


_____          _____

WITNESS                                   APPLICANT



_____          _____

WITNESS                                   _____

                                          _____


SUPPORTING DOCUMENTS

( )  Written consent of the landowners.
( )  Evidence of good faith and financial responsibility.
( )  Double estimated damages.
( )  State certified corporate charger or articles of incorporation.
( )  Certified copy of resolution or bylows of the corporation authorizing
     the filing of the application.
( )  State certification that the applicant is authorized in the State
     where the land is located.
( )  Certified copy of the articles of partnership or association.
( )  Other.

ILLUSTRATION # 2

UNITED STATES
DEPARTMENT OF THE INTERIOR
BUREAU OF INDIAN AFFAIRS

STATEMENT OF LANDOWNERS TO ACCOMPANY APPLICATION
FOR PERMISSION TO MAKE SURVEY

Date _____

Identification No. & Name _____

(Allot. No., Name, Tribal Ref. No), etc.)

_____

_____

The undersigned owner(s) of said land hereby consent to the granting of
permission to survey only. (It is understood that when the right-of-way
location is definitely established that the applicant will submit formal
application for a right-of-way in accordance with current laws and
regulation.) This consent has been negotiated on the following terms and
conditions: _____

_____

_____

| Witnesses: | Owners: | Date Signed: |
|---|---|---|
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |

(Use reverse side of this sheet if additional space is needed for the owner's
signatures. If this consent involves Tribal land, it should be by resolution.)

9

# RIGHT-OF-WAY APPLICATION

COMES NOW THE APPLICANT _____

of _____. This _____ day

of _____19 _____, who hereby petition(s) the Bureau of Indian
Affairs and respectfully files under the terms and provisions of the Act of February 5, 1948
(62 Stat. 17; 25 U.S.C 323), and Code of Federal Regulations, 25 CFR 169, an application for
a _____ right-of-way for the following purposes and reasons:
     (term of years)

Across the following described land (Easement description):

Said right-of-way to be _____ in length, _____ in
width, and _____ in size (or area), as shown on attached map of
definite location.

## SAID APPLICANT DOES HEREBY UNDERSTAND AND EXPRESSLY AGREE AS FOLLOWS:

(a)    To construct and maintain the right-of-way in a workmanlike manner.

(b)    To pay promptly all damages and compensation, in addition the deposit made
pursuant to 169.4, determined by the Secretary to be due the landowners and
authorized users and occupants of the land on account of the survey, granting,
construction and maintenance of the right-of-way.

(c)    To indemnify the landowners and authorized users and occupants against any
liability for loss of life, personal injury and property damage arising from the
construction, maintenance, occupancy or use of the lands by the applicant, his
employees, contractors and their employees, or subcontractors and their
employees.

/0

Form 5-104b
(Rev 6/73)

UNITED STATES
DEPARTMENT OF THE INTERIOR
BUREAU OF INDIAN AFFAIRS

STATEMENT OF OWNERS OF ALLOTTED INDIAN LANDS TO ACCOMPANY
APPLICATION FOR RIGHT-OF-WAY

_____Agency,_____,

Allotment No. _____ Allottee _____

Description_____

_____

The undersigned owner(s) of said land, hereby give(s) permission to make surveys

of (and consents to the granting of)* a right-of-way for_____
                                                              (state purpose)
_____as contemplated by the application of

_____as shown on the attached map,
            (Name and Address)
on payment of $_____ and other good and valuable consideration.

Other terms or comments (if applicable):_____

_____.

| Witnesses | Owners | Interest |
|-----------|--------|----------|
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |

*Strike out non-applicable items
(If more space if required, use back of this sheet or continuation sheet)